## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY SUTTON, ZAINAB SALMAN, DAVID RAMIREZ, and TYLER BAKER, individually and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| TED FOUNDATION, INC. | |
| Defendant. | |

Dated: October 19, 2023

**BURSOR & FISHER, P.A.**
Yitzhak Kopel
Max S. Roberts
1330 Avenue of the America, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
         mroberts@bursor.com

*Attorneys for Plaintiffs*

**<u>TABLE OF CONTENTS</u>**

**PAGE**

NATURE OF THE ACTION ................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

    I.     History And Overview Of The VPPA ..................................................... 2

    II.    Defendant Is A Video Tape Service Provider ......................................... 3

    III.   Defendant Knowingly Discloses Consumers' Personally Identifiable Information To Third Parties .................................................................... 4

        A.    Testing Reveals That Defendant Illegally Shares Users' PII With Third Parties Through Its TED App ................................................. 4

        B.    Testing Reveals That Defendant Illegally Shares Users' PII With Third Parties Through The TED Website ................................. 15

        C.    Defendant Discloses Personally Identifiable Information To Third Parties For The Purposes Of Marketing, Advertising, And Analytics ...... 22

        D.    Defendant Knowingly Discloses Its Users' PII To Leanplum, Mixpanel, and OpenWeb ................................................................ 27

    IV.   Experiences Of Plaintiffs ..................................................................... 30

        A.    Experience Of Plaintiff Kimberly Sutton................................... 30

        B.    Experience Of Plaintiff Zainab Salman .................................... 32

        C.    Experience Of Plaintiff David Ramirez ................................... 34

        D.    Experience Of Plaintiff Tyler Baker ........................................ 35

PARTIES ........................................................................................................ 36

JURISDICTION AND VENUE ....................................................................... 36

CLASS ALLEGATIONS ................................................................................. 37

CAUSES OF ACTION .................................................................................... 39

    Count I: Violation Of The VPPA – TED App, 18 U.S.C. § 2710 ................. 39

    Count II: Violation Of The VPPA – TED.com, 18 U.S.C. § 2710.................. 41

PRAYER FOR RELIEF................................................................................... 43

JURY DEMAND ............................................................................................ 44

i

Plaintiffs Kimberly Sutton, Zainab Salman, David Ramirez, and Tyler Baker ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant TED Foundation, Inc. ("TED" or "Defendant") for violating the Video Privacy Protection Act ("VPPA").

2.      The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers."  S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent."  *Id.*

3.      The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.

4.      Defendant produces a wide variety of pre-recorded videos that are watched by millions of consumers nationwide.  These platforms are accessible via browser on Defendant's website, as well as on mobile via the TED App on Android and Apple devices.

5.      Unbeknownst to Plaintiffs and Class Members, however, Defendant knowingly and intentionally discloses its users' personally identifiable information—including a record of every video viewed by the user—to unrelated third parties.  By doing so, Defendant is violating the VPPA.

6.     Plaintiffs bring this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## FACTUAL BACKGROUND

### I.     HISTORY AND OVERVIEW OF THE VPPA

8.     The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Pratik Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

9.     In 2012, Congress amended the VPPA, and in doing so, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones."  S. Rep. 112-258, at 2.

10.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710(b)(1).   The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is

"any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

## II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

11.    Defendant's prerecorded videos are free to watch on the browser and app regardless of whether a user signs up to create a free account.

12.    Accounts are free of charge, but individuals must provide Defendant with their first name, last name, and e-mail address in the sign-up process.  Creating a TED account comes with many benefits that users without accounts do not receive.

13.    Defendant allows users that create accounts to receive "personalized recommendations," "sync videos across all [of a user's] devices," "[d]ownload videos to watch offline," and "[a]dd talks to your list to watch later," among other benefits.[1]

14.    Defendant monetizes its extensive "free" video viewership, in part, with revenue from advertisements: "TED Talks on the web are also supported by … ads on the videos and website."[2]

---

[1] Ted, App Store, https://apps.apple.com/us/app/ted/id376183339 (last accessed Sept. 23, 2023).

[2] How Ted Works, TED, https://www.ted.com/about/our-organization/how-ted-works#: (last accessed Sept. 22, 2023).

III.    **DEFENDANT KNOWINGLY DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTIES**

A.    **Testing Reveals That Defendant Illegally Shares Users' PII With Third Parties Through Its TED App**

15.    In July 2023, Plaintiffs' counsel retained a private research company to review and conduct a dynamic analysis on the TED App ("TED App" or "App").  A "dynamic analysis" records the transmissions that occur from a user's device.

16.    The private researchers tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the TED App.  The analysis revealed that Defendant discloses to third parties information sufficient to identify specific users and the exact videos they watch.

17.    The analysis first established that Defendant incorporates multiple "application programming interfaces" ("APIs") into the TED App, either directly or contained inside a software development kit ("SDK").

18.    APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[3]

19.    Defendant integrates at least two companies' SDKs into the App and further uses another company's technological toolset to analyze its user data: the Leanplum SDK, the Mixpanel SDK, and OpenWebOS.  Each third party receives information sufficient to identify specific users and the exact videos they watch.

---

[3] Application Programming Interface (API), IBM, https://www.ibm.com/cloud/learn/api (last accessed Sept 15, 2023).

*1.    Overview of the Leanplum SDK*

20.     Defendant integrates the Leanplum "software development kit" ("SDK") into the App—an SDK named and operated by Leanplum and owned by CleverTap.[4]  The Leanplum SDK contains the encoded Leanplum API ("Leanplum API" or "Leanplum SDK").[5]

21.     "By default, the Leanplum SDK will automatically capture all session and limited amounts of other user data for you."[6]  "A session starts when a unique user has opened the app" and ends after "30 minutes or more [of] inactivity."[7]  Data that Leanplum automatically captures includes "the location or device."[8]  Leanplum claims it can allow clients (here, Defendant) to "[u]nleash the [p]otential of [a]dvanced [b]ehavioral [t]argeting."[9]

22.     In short, Leanplum's built-in tools and analytics allow it to collect and analyze user data.  "With 19 out-of-the-box metrics, Leanplum's Analytics tab allows you to start gathering

---

[4] *See* Mike Butcher, Leanplum Acquired By CleverTap As Retention Marketing Platforms Consolidate, TECHCRUNCH (May 20, 2022 at 7:18am), https://techcrunch.com/2022/05/20/leanplum-acquired-by-clevertap-as-retention-marketing-platforms-consolidate/.

[5] *See* SDK Integration, https://docs.leanplum.com/docs/install-our-sdk (last accessed Sept. 20, 2023) ("Quite simply, the Leanplum SDKs are wrappers for the Leanplum API.").

[6] Start Tracking With Leanplum, LEANPLUM, https://docs.leanplum.com/docs/start-tracking-with-leanplum (last accessed Sept. 20, 2023).

[7] Sessions, LEANPLUM, https://docs.leanplum.com/reference/sessions (last accessed Sept. 28, 2023); *see also* API Introduction, https://docs.leanplum.com/reference/api-introduction ("Leanplum organizes its data within sessions. A session is one use of an application by a user. … Sessions also include user activity, such as events (things the user does), and states (parts of the app the user is in).").

[8] Start Tracking With Leanplum, LEANPLUM, https://docs.leanplum.com/docs/start-tracking-with-leanplum (last accessed Sept. 20, 2023).

[9] LEANPLUM, https://www.leanplum.com/solutions/subscription/ (last accessed Sept. 20, 2023). *See also id.* (claiming that Leanplum allows clients to "[o]btain deep insights as you are building your audiences to understand their composition and prevent mistakes.")

intelligence on your app from the moment the SDK is integrated. Our goal is to give you the data and tools you need to create an informed and results-driven content strategy."[10]

23.     "All data from Leanplum can be exported."[11]  This can be done manually or automatically.[12]  "Raw Data Exports" contains "all data sent to Leanplum from a user, including all attributes and events tracked for every user."[13]  "Leanplum's raw user activity data contains information about: a user's attributes; device information; events a user has triggered; states a user has reached; messages a user has been sent; and A/B tests a user has been a part of."[14]

2.     *Overview of the Mixpanel SDK*

24.     Defendant integrates the Mixpanel SDK ("Mixpanel" or "Mixpanel SDK") into the TED App, an SDK owned and operated by a company of the same name.[15]

25.     Mixpanel defines itself as: "an analytics tool that enables you to capture data on how users interact with your digital product.  Mixpanel then lets you analyze this data with simple, interactive reports that let you query and visualize the data with just a few clicks."[16]

---

[10] Analytics, LEANPLUM, https://docs.leanplum.com/reference/overview (last accessed Sept. 20, 2023).

[11] Exporting Data, LEANPLUM, https://docs.leanplum.com/docs/exporting-data (last accessed Sept. 20, 2023).

[12] *See id.*

[13] *Id.*

[14] *Id.*

[15] *See* MIXPANEL, https://docs.mixpanel.com/docs/tracking/mobile (last accessed Sept. 23, 2023).

[16] What is Mixpanel?, MIXPANEL, https://docs.mixpanel.com/docs/getting-started/what-is-mixpanel (last accessed Sept. 20, 2023).

26.     Mixpanel's data model captures three main categories of information: events, users, and properties.[17]  While "[a]n event is a data point that represents an interaction between a user and your product," users are the specific individual "[o]n the other side of an event."[18]

27.     Mixpanel highlights that it allows clients like Defendant to track information such as what videos users watch.[19]



_____

[17] *See* Data Model, MIXPANEL, https://docs.mixpanel.com/docs/getting-started/what-is-mixpanel#introduction-to-the-data-model (last accessed Sept. 20, 2023).

[18] *Id.*

[19] What Should I Track?, MIXPANEL, https://docs.mixpanel.com/docs/getting-started/what-should-I-track (last accessed Sept. 20, 2023).

28.     "It takes less than 5 minutes to track events to Mixpanel."[20]  The Mixpanel SDK then analyzes user behavior from user "events."[21]

29.     Mixpanel's SDK offers Defendant a sophisticated user analysis:[22]



30.     Specifically, Mixpanel's SDK offers Defendant the ability to aggregate and organize user information into "user profiles."[23]  "Mixpanel's Users page aggregates and organizes a collection of user profiles. This facilitates a granular view into the behavior of individual users or groups of users.  The Users page can be used to: [c]ount users based on behavior, [e]xplore their

---

[20] What Should I Track?, MIXPANEL, https://docs.mixpanel.com/docs/getting-started/what-should-I-track (last accessed Sept. 20, 2023).

[21] About, MIXPANEL, https://mixpanel.com/about (last accessed Sept. 20, 2023).

[22] *See generally*, Users, MIXPANEL, https://docs.mixpanel.com/docs/analysis/users (last accessed Sept. 20, 2023); Analysis, MIXPANEL, https://mixpanel.com/analysis (last accessed Sept. 22, 2023).

[23] *Id.*

unique history, [u]pdate user profiles, [and] [c]reate cohorts of groups of users."[24]  "Because each user is unique, Mixpanel tracks which users completed what events and marries the two distinct data points by joining them."[25]

31.    The third category of information that Mixpanel catches and collects, the 'properties' of events and users, "are attributes that help [clients] define the specifics."[26]  Mixpanel collects identifying factors of a user as properties.  "This could be [a user's] name, email, or age."[27]

> 3.    *Defendant Discloses Android App Users' Names And E-Mail Addresses To Leanplum And Mixpanel*

32.    The dynamic analysis demonstrated that Defendant was sharing Android users' names and e-mail addresses to Leanplum and Mixpanel via the companies' respective APIs.

33.    A person's first and last name undoubtedly constitute personally identifying information.

34.    An email address is a unique string of characters which designate an electronic mailbox.  As industry leaders,[28] trade groups,[29] and courts[30] agree, an ordinary person can use an email address to uniquely identify another individual.  Indeed, there exists multiple services that

---

[24] Users, MIXPANEL, https://docs.mixpanel.com/docs/analysis/users (last accessed Sept. 20, 2023).

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, Ad Exchanger (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[29] Network Advertising Initiative, NAI Code Of Conduct 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[30] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

enable anyone with internet access and a credit card to look up who owns a particular email address.

35.     *Leanplum.*   As the dynamic analysis establishes, when a user watches a pre-recorded video on the App, Defendant discloses users' names and e-mail addresses to Leanplum via the Leanplum API.

36.     The following image is an excerpt of the data sent from the Android version of the App to Leanplum, as captured by the dynamic analysis.  The excerpt shows Defendant disclosing a user's first name, last name, and e-mail address to Leanplum when a user watches a pre-recorded video:

```
        "userAttributes": {
            "email": "prairie837@gmail.com",
            "first name": "Prairie",
            "is speaker": "false",
            "is_ted_supporter": "false",
            "last name": "Barrington",
            "logged in": "true"
        }
```

37.     Further, Leanplum's website indicates that Defendant may have had access to the Leanplum SDK's default capacity to disclose a user's geolocation to Leanplum: "[i]n Leanplum, you have the ability by default in our SDKs to target users based on their City, State/Region or Country. This is automatically captured in the SDK."[31]

38.     *Mixpanel.*   Similarly, when a user views a pre-recorded video on the Android version of the App, Defendant discloses to Mixpanel via the Mixpanel API a user's full name and e-mail address.

---

[31] *See* Geofencing and Location-Based Messaging, https://docs.leanplum.com/reference/geofencing-and-location-based-messaging (last accessed Sept. 19, 2023).

39.     The following image is an excerpt of the data sent from the Android version of the App to MixPanel, as captured by the dynamic analysis.  The excerpt shows Defendant disclosing a user's full name and e-mail address to Mixpanel when a user watches a pre-recorded video:

```
...
"$email": "prairie837@gmail.com",
"$lib_version": "1.5.0",
"$name": "Prairie Barrington",
"app_language": "off",
"cellular_downloads": "on",
```

*4.     Defendant Discloses iOS App Users' Names And E-Mail Addresses To Leanplum*

40.     As established above, a person's first name, last name, and e-mail address undoubtedly constitute personally identifying information.   These identifiers' distinguishing capacity is magnified when all three are disclosed in conjunction.

41.     Plaintiffs' counsel also captured Defendant disclosing a user's first name, last name, and e-mail address to Leanplum when a user watches a pre-recorded video on the iOS version of the App.

42.     The following excerpt of the dynamic analysis shows Defendant disclosing a user's e-mail address and first and last name to Leanplum when the user views a pre-recorded vide on the iOS version of Defendant's App:

```
token: "fPVffYLfQDZil5Lx5hxfO7S6RTGHAW6TovghfOcTb7mL",
"userAttributes": "{\"first name\":\"Thomas\",\"email\":\"nikefan628@gmail.com\",\"last name\":\"Anderson\",\"logged in\":true,\"is speaker\":false,\"is_ted_supporter\":false}",
"newUserId": "",
"client": "ios",
```

5. *Defendant Discloses Android App Users' User IDs to Leanplum and Mixpanel*

43. A user ID is a unique string of numbers which Defendant assigns to an individual user after a user creates a TED account. The unique user IDs allow Defendant to identify and track an individual user.

44. The Android dynamic analysis captured Defendant disclosing the same unique ID ("44785236") to both Leanplum and Mixpanel for the same user's name and e-mail address. This makes it likely that Defendant assigns a unique TED user IDs to each user once a TED account is created.



*Disclosure of User ID to Leanplum*



*Disclosure of User ID to Mixpanel*

46. This evidence also indicates that Defendant discloses a user's unique TED account ID along with other personally identifying information, such as name and e-mail address, to assist in third parties' marketing, advertising, and analysis of Defendant's user data.

6. *Defendant Discloses Information Identifying Which Specific Videos Were Watched By Which Android App Users To Leanplum and Mixpanel*

47. When Defendant transmits a user's identifiers, it also transmits information sufficient to identify which specific video was watched by the user, such as the video name, video ID, video topics, video channel ID, and/or video publisher ID.

48.     ***Leanplum***.  Defendant discloses to Leanplum via the Leanplum API the full name and video ID of the video a user viewed on the Android App.  For example, the following excerpt shows the traffic captured by the dynamic analysis of an Android App user.  The video title the user watched is "For parents, happiness is a very high bar."  The video ID for Defendant's video of that same title is "1974."

```
            '
            "userAttributes": {
              "ID": "1974",
              "Title": "For parents, happiness is
a very high bar"
            },
```

49.     As captured above, Defendant discloses to Leanplum the TED video ID of the video an individual user watches—"1974."  This identification number correlates to the video a user watches and allows Defendant and Leanplum to further categorize the exact video a user watches into the user's PII, then use that information in Defendant's marketing, analytics, and advertising.

50.     Specifically, when conducting a simple Google search with the phrase "Ted id 1974" or "Ted id1974," the first few search results are articles about or responding to Jennifer Senior's TED Talk, "For parents, happiness is a very high bar."[32]  The articles each display the TED video ID, showing that even an ordinary person understands which video correlates with the TED video ID number.

---

[32] *See, e.g.*, TED Guest Author, IDEAS.TED.COM (June 10, 2014), https://ideas.ted.com/from-the-comments-are-we-over-sensitive-or-what/ (responding to Jennifer Senior's TED Talk, "For parents, happiness is a very high bar"); Luca Bosurgi, BLOG (Apr. 15, 2014), https://blog.lucabosurgi.com/for-parents-happiness-is-a-very-high-bar-jennifer-senior-ted-talk/ (discussing the TED Talk video "For parents, happiness is a very high bar"); Becky Striepe, FEELGOODSTYLE (2014), https://feelgoodstyle.com/articles/jennifer-senior-parenting/ (evaluating Jennifer Senior's same TED Talk).

51.  Given this already public level of disclosure, Defendant provides Leanplum with backend tools to match a video's unique ID to a video's title so that Leanplum can help Defendant enhance its marketing and advertising efforts.

52.  ***Mixpanel***.  Defendant discloses to Mixpanel via the Mixpanel API the full video name, video ID, and video topics of a video that a user watches on the Android version of the App. The following image is an excerpt of the traffic captured by the Android dynamic analysis showing the disclosure of these video identifiers by Defendant to Mixpanel:

```
        "system_language": "en",
        "talk_id": "5162",
        "talk_slug":
"angela_wang_how_china_is_changing_the_future_of_shopping"
,
        "talkstar_context": "TED@BCG Milan",
        "time": "1684766556117",
        "token": "cefc84a7a812fb3bb40d6efadb6b3163",
        "video_duration": "823.529",
        "video_post_date": "2017-12-14T19:59:35.000Z",
        "video_topics": [
          "China",
          "Business",
          "Innovation",
          "Social Change",
          "Future",
          "Society",
          "Technology",
          "Internet",
          "Shopping",
          "Transportation"
        ]
```

7.    *Defendant Discloses Information Identifying Which Specific Videos Were Watched By Which Specific iOS App Users To Leanplum*

53.    In a similar dynamic analysis with Defendant's iOS App, Plaintiff's counsel obtained evidence that Defendant is transmitting the video-watching information of iOS App users to Leanplum.  Specifically, Defendant transmits to Leanplum the video titles that an iOS App user watches.

54.    Displayed below is an excerpt of the dynamic analysis showing Defendant disclosing to Leanplum the full video title that an iOS App user watched:

```
token. T+rTTTYLE/QDEHOZEXOMIOTOOATOHAWOTOTGMIUOTDTHEZ|
  "userAttributes": "{\"ID\":114470,\"Title\":\"A powerful new neurotech tool for augmenting your
mind\"}",
  "newUserId": "",
  "client": "ios",
```

55.    A video's title is the most direct way for a third party to understand a specific user's video-viewing information.  Indeed, with this information, even an ordinary person is able to identify the exact video a specific user watches.

56.    Defendant owns and operates both the Android and iOS versions of the TED App. Leanplum uses the same or similar backend tools that Defendant provides it in the Android version of the App to match a video's unique ID to a video's title so that Leanplum can help Defendant enhance its marketing and advertising efforts in the iOS version of the App.

**B.    Testing Reveals That Defendant Illegally Shares Users' PII With Third Parties Through The TED Website**

57.    The dynamic analysis also established that Defendant utilizes at least one social engagement platform product on the TED website ("Ted.com" or "Website") to build its online user base.  Social engagement platforms take and analyze the data, then apply "quality-first

algorithms [that] ensure that … more [users] will want to stay, read, and register" to a website or internet product.[33]

58.    For its Website, Defendant partners with OpenWeb (formerly known as Spot.IM).[34]

*1.    Overview Of OpenWebOS*

59.    OpenWeb is an "end-to-end suite for building a community" of followers ("OpenWeb" or "OpenWebOS").[35]  The "backbone of OpenWebOS" is "utiliz[ing] the latest AI and Machine Learning-powered moderation to ensure high quality conversations."[36]

60.    This improved content quality then facilitates increased user retention—and increased revenue from relevant advertising:[37]



---

[33] Moderation, OPENWEBOS, https://www.openweb.com/openwebos/moderation/ (last accessed Sept. 21, 2023).

[34] *See* Press Release, OPENWEBOS, https://www.openweb.com/blog/press-release-spot-im-is-now-openweb (last accessed Sept. 20, 2023).

[35] The OpenWebOS, https://www.openweb.com/openwebos/ (last accessed Sept. 20, 2023).

[36] Experience, OPENWEBOS, https://www.openweb.com/openwebos/experience/ (last accessed Sept. 22, 2023).

[37] The OpenWebOS, https://www.openweb.com/openwebos/ (last accessed Sept. 20, 2023).

61.     OpenWeb offers its services to both publishers and advertisers.  Publishers can use OpenWebOS to "create engaging on-site experiences" that help retain an interested and loyal user base.[38]  OpenWeb boasts that its tools can help publishers "grow [their] logged-in user base" and "monetize [their] content."[39]

62.     While OpenWebOs is "moderating" a website, "OpenWebOS tracks behavior at the user level to build a predictive profile."[40]  In addition to moderating a website's content, OpenWebOS' services include analyzing and understanding a client's user base as well as using that data to target users and monetize content:[41]



Identity

Know your audience: grow your logged-in user base with OpenWebOS's registration funnels, SSO, and more. Of our top partners' users, up to 30% are registered via OpenWebOS.

*More about OpenWebOS Identity* ⟶

---

[38] Experience, OPENWEB, https://www.openweb.com/openwebos/experience/ (last accessed Sept. 20, 2023).

[39] OpenWeb, https://www.openweb.com/openwebos/ (last accessed Sept. 21, 2023).

[40] Moderation, OPENWEBOS, https://www.openweb.com/openwebos/moderation/ (last accessed Sept. 21, 2023).

[41] Activate, OPENWEBOS, https://www.openweb.com/openwebos/activate/ (last accessed Sept. 21, 2023).

# Activate

With the end of third party cookies, ad revenue could fall by up to 70% in 2022. Activate your audience every step of the way through real-time segmentation and targeting to monetize your content—and your conversations.

*More about OpenWebOS Activate* ⟶

63. Ultimately, OpenWeb allows its publisher partners to leverage collected user data, analyze the data, and synthesize the data to create better published offerings in the form of targeted, increasingly engaging content for users. "OpenWebOS turns engagement into insights, and insights into sustainable revenue" "through context-relevant, high-value advertising at scale:"[42]



Personalized Activations

Leverage insights to deliver the right opportunity to the right users at the right time. Make special offers, engage with custom newsletters—and offer valuable (registered) audiences to gather higher CPMs on your advertising offerings. Personalize at scale with OpenWebOS.

---

[42] *Id.*

64.     Advertisers can use OpenWeb's many tools to "boost [ad] performance" by capturing users' attention with "contextually relevant and highly viewable ads."[43]  OpenWeb's website boasts that use of OpenWeb "advertising facilitates multiple ways to reach your consumers."[44]  The following screenshot from OpenWeb's website captures a few of OpenWeb's advertising capabilities:[45]



65.     Defendant partners with OpenWeb because OpenWeb allows its clients to "win on the web."[46]  OpenWeb's functions allow clients like Defendant to "[e]ngage and convert … casual readers into a community of loyal, active, registered users;" "[i]dentify and [a]nalyze" the audience

---

[43] Conversation Ads, OPENWEBOS, https://www.openweb.com/high-impact-campaigns/ (last accessed Sept. 20, 2023).

[44] Campaigns, OPENWEBOS, https://www.openweb.com/high-impact-campaigns/ (last accessed Sept. 22, 2023).

[45] Advertising Marketplace, OPENWEBOS, https://www.openweb.com/openweb-marketplace/ (last accessed Sept. 20, 2023).

[46] The OpenWebOS, https://www.openweb.com/openwebos/ (last accessed Sept. 20, 2023).

through "first-party data;" and "[a]dvertise … at scale across high-intent, high-engagement communities on the open web."[47]

      *2.    Defendant Discloses Class Members' Names and E-Mail Addresses to OpenWeb*

66.    The dynamic analysis provided solid proof that Defendant was indeed sharing users' names and e-mail addresses with OpenWeb.

67.    As mentioned above, an email address is a unique string of characters which designate an electronic mailbox.[48]

68.    The following image is an excerpt of the data sent from the Website to OpenWeb, as captured by the dynamic analysis.  The excerpt shows Defendant disclosing a user's full name and e-mail address to OpenWeb when a user watches a pre-recorded video:



      *3.    Defendant Discloses Information Identifying Which Specific Videos Were Watched By Which Specific Class Members To OpenWeb*

69.    Defendant discloses to OpenWeb the full name of the video viewed by the user.  For example, in the picture below of the OpenWeb dynamic analysis' network traffic, the video title Defendant transmitted to OpenWeb is Jack Cooper and Catalina Pimiento's TED Talk "Why Did Megalodon Go Extinct":

---

[47] OpenWebOS, https://www.openweb.com/openwebos/ (last accessed Sept. 20, 2023).

[48] *See* § III.A(4).

    "domain": "www.ted.com",
    "url":
"https://www.ted.com/talks/jack_cooper_and_catali
na_pimiento_why_did_megalodon_go_extinct",
    "lang": "en-US",

70.     Although the name of the video is disclosed as a URL, this information nonetheless indicates that a user has watched the specific video named in the URL.  It is true that the aforementioned video appears on a webpage that has a playlist of other videos that will play next:



71.     However, if the user clicks on another video from the playlist, or if the next video plays automatically, a *different* URL (*i.e.*, video title) will be displayed and transmitted:



72.     Accordingly, the transmission of the URL/video title indicates that a user watched a specific video, not just that the user visited a webpage with multiple videos.

73.     Further, the page actually displays a video, rather than an article or other non-video content.

**C.      Defendant Discloses Personally Identifiable Information To Third Parties For The Purposes Of Marketing, Advertising, And Analytics**

> *1.      Defendant Discloses Users' PII To Leanplum For The Purposes Of Marketing, Advertising, And Analytics*

74.     Defendant transmits a user's name, e-mail address, TED account user ID, and video name and video ID to Leanplum so the Leanplum SDK can analyze user behavior.  Through Leanplum's analysis results, Defendant's ultimate goal is to streamline how it targets different users with different marketing and advertising strategies, and thereby increase its user base.

75.     Indeed, TED's Director of Mobile and Platforms, Cody Winn, noted that "Leanplum is our avenue for understanding how different mobile app users engage with different content."[49]

76.     To achieve this, the Leanplum API has built-in functions to "[r]etrieve[] attributes for the current user," "[e]xport[] multiple user IDs … up to 40 times successfully per day," and "[e]xport statistics for … user activity in your app … over a specified period of time."[50] Winn also boasted: "[w]ith Leanplum, we are able to manage push and in-app messaging—content featuring, targeting, and optimizations—entirely from our team focused on editorial and product engagement."

77.     Thus, when used by Defendant, "Leanplum empowers TED to run sophisticated campaigns to increase key metrics … based on insights from those campaigns, TED can easily make decisions on messaging strategies and switch gears when needed."[51]

       *2.     Defendant Discloses Users' PII To Mixpanel For The Purposes Of Marketing, Advertising, And Analytics*

78.     Defendant transmits a user's name, e-mail address, TED account user ID, and video name, ID, and topics to Mixpanel so the Mixpanel API can "analyze" user metrics, "[v]iew how users convert at each step," and "[monitor] growth[,] engagement," and "retention."[52] By doing

---

[49] Ted Case Study, LEANPLUM, https://www.leanplum.com/customers/ted/ (last accessed Sept. 20, 2023).

[50] Export Data, LEANPLUM, https://docs.leanplum.com/reference/get_api-action-exportreport (last accessed Sept. 15, 2023).

[51] Ted Case Study, LEANPLUM, https://www.leanplum.com/customers/ted/.

[52] Analysis, MIXPANEL, https://mixpanel.com/analysis (last accessed Sept. 20, 2023).

23

so, Mixpanel claims it allows clients like Defendant to "make changes that lead to customer loyalty."[53]

79.      On Defendant's website, Defendant confirms this usage of the Mixpanel API for the purposes of analyzing user behavior, targeting marketing and advertising offerings, and ultimately retaining a larger user base. [54]

80.      Mixpanel appears to offer a built-in data tracking service that tracks all of a client's users:[55]



[53] *Id.*

[54] *See* Privacy Policy, TED, https://www.ted.com/about/our-organization/our-policies-terms/privacy-policy (last accessed Sept. 22, 2023).

[55] Users, MIXPANEL, https://docs.mixpanel.com/docs/analysis/users (last accessed Sept. 22, 2023).

81.     Mixpanel's technology then analyzes the captured user data and generates several types of reports. These reports cover "[i]nsights, [f]unnels, [f]lows, [r]etention and other advanced reports, each with their specialized use."[56]   Mixpanel's reports aid Defendant in marketing, advertising, and analytics in the TED App.

3.     *Defendant Discloses Users' PII To OpenWeb For The Purposes Of Marketing, Advertising, And Analytics*

82.     Defendant transmits a user's name, e-mail address, TED account user ID, and video name to OpenWeb so that OpenWebOS can use its "countless ways to engage users and understand first party data."[57]   This, in turn, aids Defendant in analyzing, advertising, and marketing its content to users of its Website.

83.     OpenWeb analyzes information so that clients "can understand[] [their] users in the context of [their] community." [58]   This analysis generates "insights" that lead to increased monetization and other "business outcomes."[59]

---

[56] Reports, MIXPANEL, https://docs.mixpanel.com/docs/analysis/reports (last accessed Sept. 19, 2023).

[57] Activate, OPENWEBOS, https://www.openweb.com/openwebos/activate/ (last accessed Sept. 19, 2023).

[58] *Id.*

[59] *Id.*



84.     OpenWeb also delivers personalized and targeted content to users.  The goal of customized marketing through OpenWeb's analysis is to "offer valuable (registered) audiences to gather higher" returns on clients' "advertising offerings."[60]

85.     The advertising portion of OpenWeb's moderating services allows OpenWeb to "help[] publishers engage readers and target them with ads."[61]  This feature was made easier with OpenWeb's April, 2022 acquisition of Adyoulike, "a leading global advertising platform."[62]

86.     In short, OpenWeb's "tech works to foster online conversation around news stories while also providing first-party data for marketers to reach readers on media companies'

---

[60] *Id.*

[61] Patrick Coffee, *OpenWeb, Which Helps Publishers Target Readers With Ads, Raises $170 Million*, WSJ (Oct. 27, 2022), https://www.wsj.com/articles/openweb-which-helps-publishers-target-readers-with-ads-raises-170-million-11666868402.

[62] Announcements, OPENWEB, https://www.openweb.com/blog/weve-acquired-adyoulike-to-build-a-more-sustainable-healthier-web (last accessed Sept. 20, 2023).

websites." [63]   This provides Defendant with a wealth of resources to conduct marketing, advertising, and analytics campaigns on the Website.

      **D.**      **Defendant Knowingly Discloses Its Users' PII To Leanplum, Mixpanel, and OpenWeb**

      87.      Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Leanplum and Mixpanel, through the Leanplum SDK and Mixpanel SDK respectively, its users' personally identifiable information and video-viewing information.  It is also abundantly clear that Defendant *intentionally* and *knowingly* discloses to OpenWeb, through its partnership with the TED Website, its users' personally identifiable information and video-viewing information.

      88.      ***Leanplum***.   Defendant *intentionally* and *knowingly* discloses users' PII to Leanplum via the Leanplum SDK.  In fact, Leanplum's partnership with Defendant was so successful that Leanplum turned Defendant's optimization of its users' data into one of its online published case studies: "Leanplum empowers TED to run sophisticated campaigns to increase key metrics, without relying on developers."[64]

      89.      Defendant dispels any doubt about its intentional and knowing disclosure of PII to Leanplum by appearing prominently on Leanplum's website as one of Leanplum's clients:[65]

---

[63] Marty Swant, *With first CMO hire, OpenWeb hopes to 'de-troll' the discussions and data space for publishers*, DIGIDAY (Sept. 20, 2022), https://digiday.com/marketing/with-first-cmo-hire-openweb-hopes-to-de-troll-the-discussions-and-data-space-for-publishers/.

[64] TED Case Study, LEANPLUM, https://www.leanplum.com/customers/ted/ (last accessed Sept. 22, 2023).

[65] Leanplum, https://www.leanplum.com/ (last accessed Sept. 22, 2023).



90.     Further, Leanplum's TED Case Study notes that Defendant turned to Leanplum because "TED wanted to set up messaging campaigns to more effectively drive an increase in views of TED Talks in its iOS and Android apps."[66]  Defendant used the Leanplum SDK's thorough marketing, advertising, and analytics toolset to lift its mobile application user engagement by 72%.[67]

---

[66] TED Case Study, LEANPLUM, https://www.leanplum.com/customers/ted/ (last accessed Sept. 22, 2023).

[67] Case Studies, LEANPLUM, https://discover.leanplum.com/c/how-ted-lifted-mobil?x=a0JgE1 (last accessed Sept. 22, 2023).



91.     Leanplum boasts that its partnership with Defendant was so successful that Defendant was now turning towards loftier goals: "[t]o take the next step in offering relevant content, TED is personalizing talk recommendations for any user, based on the individual viewer's interests and motivations."[68]

92.     ***Mixpanel***.  Defendant *intentionally* and *knowingly* discloses users' PII to Mixpanel via the Mixpanel API.  Defendant's website clearly states that Defendant uses Mixpanel's technology "to help manage TED offerings, track the use of the content we provide, understand how our audiences are using our TED offerings, and to better personalize them."[69]  Defendant further specifies that: "[w]e do not sell data collected from cookies to any third party, but may provide information to partners *to help us update and maintain our website*."[70]

93.     It is no coincidence that Defendant chooses to intentionally disclose user data to Mixpanel and discuss its collaboration with Mixpanel in Defendant's Privacy Policy. [71] Accordingly, Defendant has admitted that it leverages Mixpanel's ability to "safeguard[] customer

---

[68] *Id.*

[69] Privacy Policy, https://www.ted.com/about/our-organization/our-policies-terms/privacy-policy (last accessed Sept. 22, 2023).

[70] *Id.* (emphasis added); *see also id.* (stating that the "mobile apps, platforms [sic] and related sites" are "collectively referred to as 'TED Sites'" and are governed by the same privacy policy).

[71] *Id.*

data" and "logically separate[] user data" to knowingly and intentionally drive revenue on the TED App through marketing, advertising, and analytics.[72]

94.     **OpenWeb**.     Defendant *intentionally* and *knowingly* discloses users' PII to OpenWeb.  Defendant's website clearly states: "[c]omments on TED.com are hosted and moderated by OpenWeb, an innovative social engagement platform that uses both AI and human moderators to empower publishers like TED to shift discussions from social media back to their own online communities."[73]  To ensure that Defendant is fully maximizing OpenWeb's data collection and analysis tools, "only logged-in TED.com account holders can add, reply to, or like comments."[74]

95.     Moreover, common sense dictates that a sophisticated media foundation like Defendant, who includes several data collection and analysis APIs and advertising platforms into its App, as well as partners with a social engagement platform through its Website, is fully aware of the scope of the data that these third parties are collecting.  This shows that Defendant is choosing to intentionally provide that data to Leanplum, Mixpanel, and OpenWeb in order to obtain their analyzing, marketing, and advertising services.

## IV.    EXPERIENCES OF PLAINTIFFS

### A.    Experience Of Plaintiff Kimberly Sutton

103.    In or about January 2008, Plaintiff Sutton created a TED account and downloaded the TED App on her Android phone.  Plaintiff Sutton has used the same account on the TED App

---

[72] Security Overview, MIXPANEL, https://mixpanel.com/legal/security-overview (last accessed Sept. 22, 2023).

[73] Comments FAQ, TED, https://help.ted.com/hc/en-us/articles/10243557615383-TED-com-Comments-FAQ (last accessed Sept. 22, 2023).

[74] *Id.*

since January 2008.  Plaintiff Sutton most recently watched a TED Talk in or about June 2023.
Between January 2008 and June 2023, Plaintiff Sutton used the mobile TED App on her Android
phone to watch various videos from her TED account.

104.    Plaintiff Sutton regularly takes advantage of the benefits that come with her TED
account.  These benefits include: receiving personalized recommendations for videos in the App,
syncing videos across all her devices, downloading videos to watch offline, adding individual TED
Talks to her personal 'watch later' library, and "liking" videos.  Plaintiff Sutton also used the
account-holders' exclusive benefit of commenting on TED videos through her TED account in the
App.

105.    At all relevant times, Plaintiff Sutton never consented, agreed, nor otherwise
permitted the App to disclose her PII to third parties.

106.    Likewise, Defendant never gave Plaintiff Sutton the opportunity to prevent the App
from disclosing her PII to third parties.

107.    Nevertheless, each time Plaintiff Sutton viewed a video on the TED App, Defendant
disclosed her PII to Leanplum via the Leanplum SDK (and encoded API).  Specifically, Defendant
disclosed to Leanplum via the Leanplum SDK Plaintiff Sutton's: (i) name; (ii) e-mail address; (iii)
TED account user ID; and (iv) video-viewing information in the form of the video ID and video
name for each specific video watched by Plaintiff Sutton.  Using this information, Leanplum was
able to identify Plaintiff Sutton and attribute her video viewing records to an individualized profile
of Plaintiff Sutton in its databases.  Indeed, even an ordinary person could identify Plaintiff Sutton
using the data Defendant disclosed to Leanplum.  Leanplum compiled Plaintiff Sutton's PII and
Plaintiff Sutton's activity on the App, which Defendant uses for marketing, advertising, and
analytics purposes.

108.    In addition, each time Plaintiff Sutton viewed a video on the App, Defendant disclosed her PII to Mixpanel via the Mixpanel SDK.  Specifically, Defendant disclosed to Mixpanel via the Mixpanel SDK Plaintiff Sutton's: (i) name; (ii) e-mail address; (iii) TED account user ID; and (iv) video-viewing information in the form of the video name, video ID, and video topics for each specific video watched by Plaintiff Sutton.  Using this information, Mixpanel was able to identify Plaintiff Sutton and her video-viewing records to distinguish Plaintiff Sutton's individual video-viewing behavior.  Indeed, even an ordinary person could identify Plaintiff Sutton using the data Defendant disclosed to Mixpanel.  Mixpanel compiled and retained Plaintiff Sutton's PII and Plaintiff Sutton's activity on the App into a cohesive user profile, which Defendant uses for marketing, advertising, and analytics purposes.

**B.    Experience Of Plaintiff Zainab Salman**

109.    In or about June 2013, Plaintiff Salman created a TED account and downloaded the TED App on her Android phone.  Plaintiff Salman most recently used the TED App to watch videos in May 2022.  Between June 2013 and May 2022, Plaintiff Salman used her TED account on the TED App to watch videos on her Android phone.

110.    Plaintiff Salman regularly took advantage of the benefits that came with her TED account.  This included: receiving personalized recommendations for videos in the App, syncing TED videos across different devices with her TED account, downloading videos to watch offline, and adding individual TED Talks to her personal 'watch later' library.

111.    At all relevant times, Plaintiff Salman never consented, agreed, nor otherwise permitted the App to disclose her PII to third parties.

112.    Likewise, Defendant never gave Plaintiff Salman the opportunity to prevent the TED App from disclosing her PII to third parties.

113.    Nevertheless, each time Plaintiff Salman viewed a video on the App, Defendant disclosed her PII to Leanplum via the Leanplum SDK (and encoded API).  Specifically, Defendant disclosed to Leanplum via the Leanplum SDK Plaintiff Salman's: (i) name; (ii) e-mail address; (iii) TED account user ID; and (iv) video-viewing information in the form of the video ID and video name for each specific video Plaintiff Salman watched.  Using this information, Defendant was able to identify Plaintiff Salman and her video-viewing records to distinguish Plaintiff Salman's individual video-viewing behavior.  Indeed, even an ordinary person could identify Plaintiff Salman using the data Defendant disclosed to Leanplum.  Leanplum compiled and retained Plaintiff Salman's PII and Plaintiff Salman's activity on the App, which Defendant uses for marketing, advertising, and analytics purposes.

114.    In addition, each time Plaintiff Salman viewed a video on the App, Defendant disclosed her PII to Mixpanel via the Mixpanel API.  Specifically, Defendant disclosed to Mixpanel via the Mixpanel API Plaintiff Salman's: (i) name; (ii) e-mail address; (iii) TED account user ID; and (iv) video-viewing information in the form of the video name, video ID, and video topics for each specific video watched by Plaintiff Salman.  Using this information, Mixpanel was able to identify Plaintiff Salman and attribute her video viewing records to an individualized profile of Plaintiff Salman in its databases.  Indeed, even an ordinary person could identify Plaintiff Salman using the data Defendant disclosed to Mixpanel.  Mixpanel compiled and retained Plaintiff Salman's PII and activity on the TED App into a cohesive user profile, which Defendant uses for marketing, advertising, and analytics purposes.

### C.      Experience Of Plaintiff David Ramirez

115.    In or about January 2016, Plaintiff Ramirez created a TED account and downloaded the TED App on his Apple iPhone.

116.    Plaintiff Ramirez most recently watched a pre-recorded TED video in October 2023.  Through his TED account on his iPhone, Plaintiff Ramirez used the TED App to watch various videos between January 2016 and October 2023.  Plaintiff Ramirez used the same account on the TED App to view videos throughout this period.

117.    Plaintiff Ramirez regularly takes advantage of the benefits associated with his TED account.  These benefits include: receiving personalized recommendations for videos, syncing videos across his Apple devices, saving videos to his personal "watch later" library, and "like[ing]" videos.

118.    At all relevant times, Plaintiff Ramirez never consented, agreed, nor otherwise permitted the App to disclose his PII to third parties.

119.    Likewise, Defendant never gave Plaintiff Ramirez the opportunity to prevent the App from disclosing his PII to third parties.

120.    Nevertheless, each time Plaintiff Ramirez viewed a video on the TED App, Defendant disclosed his PII to Leanplum via the Leanplum SDK (and encoded API).  Specifically, Defendant disclosed to Leanplum via the Leanplum SDK Plaintiff Ramirez's: (i) name; (ii) e-mail address; and (iii) video-viewing information in the form of the video name for each specific video watched by Plaintiff Ramirez.  Using this information, Leanplum was able to identify Plaintiff Ramirez and attribute his video viewing records to an individualized profile of Plaintiff Ramirez in its databases.  Indeed, even an ordinary person could identify Plaintiff Ramirez using the data Defendant disclosed to Leanplum.  Leanplum compiled Plaintiff Ramirez's PII and Plaintiff

Ramirez's activity on the App, which Defendant uses for marketing, advertising, and analytics purposes.

**D.      Experience Of Plaintiff Tyler Baker**

121.    In or about January 2022, Plaintiff Tyler Baker accessed and created a free TED account.  Plaintiff Baker then used his TED account to watch videos on the Website.  Plaintiff Baker most recently watched a TED video in or about July 2023.  Between January 2022 and July 2023, Plaintiff Baker used his TED account to watch prerecorded TED videos on Defendant's Website.

122.    Plaintiff Baker regularly takes advantage of the TED account-holder exclusive benefit of receiving personalized recommendations for videos.

123.    At all relevant times, Plaintiff Baker never consented, agreed, nor otherwise permitted the Website to disclose his PII to third parties.

124.    Likewise, Defendant never gave Plaintiff Baker the opportunity to prevent the Website from disclosing his PII to third parties.

125.    Nevertheless, each time Plaintiff Baker viewed a video on the Website, Defendant disclosed his PII to OpenWeb.  Specifically, Defendant disclosed to OpenWeb Plaintiff Baker's: (i) name; (ii) e-mail address; and (iii) video-viewing information in the form of the video name for each specific video watched by Plaintiff Baker.  Using this information, OpenWeb was able to identify Plaintiff Baker and his video-viewing records to distinguish Plaintiff Baker's video-viewing behavior.  Indeed, even an ordinary person could identify Plaintiff Baker using the data Defendant disclosed to OpenWeb.  OpenWeb compiled Plaintiff Baker's PII on the Website in its databases, which Defendant uses for marketing, advertising, and analytics purposes.

**PARTIES**

126.    Plaintiff Kimberly Sutton is, and has been at all relevant times, a resident of California and has an intent to remain there.  Plaintiff Sutton is therefore a citizen of California.

127.    Plaintiff Zainab Salman is, and has been at all relevant times, a resident of Illinois and has an intent to remain there.  Plaintiff Salman is therefore a citizen of Illinois.

128.    Plaintiff David Ramirez is, and has been at all relevant times, a resident of Florida and has an intent to remain there.  Plaintiff Ramirez is therefore a citizen of Florida.

129.    Plaintiff Tyler Baker is, and has been at all relevant times, a resident of Vermont and has an intent to remain there.  Plaintiff Baker is therefore a citizen of Vermont.

130.    Defendant TED Foundation, Inc., is a charitable organization exempt from taxation under section 501(c)(3) of the Internal Revenue Code whose principal place of business is located at 330 Hudson Street, 11th Floor, New York, NY 10013.  Defendant develops, owns, and operates the TED App and Ted.com website, which are both used throughout the United States and globally.

**JURISDICTION AND VENUE**

131.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

132.    This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

133.    This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business at 330 Hudson Street, 11th Floor, New York, NY 10013. This Court also has specific personal jurisdiction over Defendant because the TED App and

Website collected and disseminated users' personally identifiable information giving rise to this lawsuit in this District, and the conduct giving rise to this action arises out of and relates to that business.

134.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District and a substantial part of the events giving rise to the claim occurred in this District.

## CLASS ALLEGATIONS

135.     **Class Definition**: Plaintiffs Sutton, Salman, and Ramirez seek to represent a class of similarly situated individuals defined as all persons in the United States who used the TED Android App and TED iOS App to watch videos and had their PII transmitted to a third party (the "App Class").

136.     Plaintiff Baker seeks to represent a class of similarly situated individuals, defined as all persons in the United States who used "Ted.com" to watch videos and had their PII transmitted to a third party (the "Website Class").

137.     Collectively, the App Class and the Website Class shall be referred to as the "Classes."

138.     Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

139.     **Numerosity (Fed. R. Civ. P. 23(a)(1))**:  At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes.  However, given the popularity of Defendant's TED Talks and affiliated TED videos, as well as the free cost to view a TED Talk on

either Defendant's TED App or Website, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

140. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3))**: There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

       (a)    whether Defendant collected PII from Plaintiffs and the Subclass members;

       (b)    whether Defendant unlawfully disclosed and continues to disclose its users' PII, including their video viewing records, in violation of the VPPA;

       (c)    whether Defendant's disclosures were committed knowingly; and

       (d)    whether Defendant disclosed the Plaintiffs' and the Subclass members' PII without consent.

141. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, used either the TED App or Website to watch videos, and consequently had their PII collected and disclosed by Defendant.

142. **Adequacy (Fed. R. Civ. P. 23(a)(4))**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes. Neither the Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the

Classes, additional claims as may be appropriate, or to amend the definition of the Subclasses to address any steps that Defendant took.

143.    **Superiority (Fed. R. Civ. P. 23(b)(3))**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes.  Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation Of The VPPA – TED App
### 18 U.S.C. § 2710

144.    Plaintiffs Sutton, Salman, and Ramirez incorporate the foregoing allegations as if fully set forth herein.

145.    Plaintiffs Sutton, Salman, and Ramirez bring this claim individually and on behalf of the members of the proposed App Class against Defendant.

146.    Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C.

§ 2710(a)(4), inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its TED App.

147.    Plaintiffs Sutton, Salman, Ramirez, and the App Class members are "consumers" as defined by the VPPA because they created TED accounts with their names and e-mail addresses, obtained the benefits associated with creating a TED account, and subsequently watched videos through those accounts on the TED mobile application, either on the Android or iOS versions.  18 U.S.C. § 2710(a)(1).  Under the VPPA, this means that they were "subscriber[s]" of "goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

148.    That is, through their creation of an account on Defendant's App, the purpose of which is to provide pre-recorded video content to users, Plaintiffs Sutton, Salman, Ramirez, and the App Class members provided additional information that was used to track them without their consent and received benefits in exchange, and therefore are "subscribers" because they registered, committed, and expressed association with the TED App.

149.    Plaintiffs Sutton, Salman, Ramirez, and the App Class members viewed prerecorded video clips using either the Android or iOS versions of the App.  During these occasions, the App disclosed Plaintiffs' and Subclass members' PII—including their names, e-mail addresses, and records of the videos that they viewed—to third party analytics companies Leanplum and Mixpanel.

150.    The App's transmissions of Plaintiffs' and the App Class members' PII to Leanplum and Mixpanel constitutes "knowing[] disclosures" of their "personally identifiable information" to a person as proscribed by the VPPA.  18 U.S.C. § 2710(a)(1).

151.    Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or

services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

152. The information disclosed by the TED App constitutes "personally identifiable information" in this context because it would allow an ordinary person—let alone Leanplum and Mixpanel—to identify Plaintiffs Sutton, Salman, Ramirez, and the App Class members, and which specific videos they viewed.

153. Plaintiffs and the App Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

154. Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the App's disclosures to Leanplum and Mixpanel were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

155. On behalf of themselves and the proposed App Class, Plaintiffs seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Subclass by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## COUNT II
### Violation of the VPPA – TED.com,
### 18 U.S.C. § 2710

156. Plaintiff Baker incorporates the foregoing allegations as if fully set forth herein.

157. Plaintiff Baker brings this claim individually and on behalf of the members of the proposed Website Class against Defendant.

158.    Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via Ted.com.

159.    Plaintiff Baker and Website Class members are "consumers" as defined by the VPPA because they signed up for and created TED user accounts to access and watch videos on Defendant's Website, obtained the benefits of creating a TED account, and subsequently watched videos on the Website through their TED accounts.  18 U.S.C. § 2710(a)(1).  Under the VPPA, this means that they were "subscriber[s]" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

160.    That is, through their creation of an account on Defendant's Website, the purpose of which is to provide pre-recorded video content to users, Plaintiff Baker and the Website Class members provided additional information that was used to track them without their consent and received benefits in exchange, and therefore are "subscribers" because they registered, committed, and expressed association with the Website.

161.    Plaintiff Baker and the Website Class members viewed prerecorded video clips using their TED accounts on the TED Website.  During these occasions the Website disclosed Plaintiff's and Subclass members' PII—including their names, e-mail addresses, and records of the videos that they viewed—to third party analytics company OpenWeb.

162.    Ted.com's transmissions of Plaintiff Baker's and Website Class members' PII to OpenWeb constitutes "knowing[] disclosures" of their "personally identifiable information" to a person as proscribed by the VPPA.  18 U.S.C. § 2710(a)(1).

163.    Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

164.    The information disclosed by Defendant's Website constitutes "personally identifiable information" in this context because it would allow an ordinary person—let alone OpenWeb—to identify Plaintiff Baker and the Website Class members and which specific videos they viewed.

165.    Plaintiff and the Website Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

166.    Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  In particular, the Website's disclosures to OpenWeb were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).

167.    On behalf of himself and the proposed Website Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff Baker and the proposed Subclass by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kimberly Sutton, Zainab Salman, David Ramirez, and Tyler Baker seek a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

43

(a)     For an order certifying the two Nationwide Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs Sutton, Salman, and Ramirez as representatives of the proposed App Class; Plaintiff Baker as representative of the proposed Website Class; and Plaintiffs' attorneys as Class Counsel to represent the Subclasses;

(b)     For an order declaring that Defendant's conduct violates the VPPA referenced herein;

(c)     For an order finding in favor of Plaintiffs and the Subclasses on all counts asserted herein;

(d)     For an award of statutory damages to the extent available;

(e)     For punitive damages, as warranted, in an amount to be determined at trial;

(f)     For prejudgment interest on all amounts awarded;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses, as well as costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiffs demand a trial by jury of all issues so triable.

Dated: October 19, 2023                    Respectfully submitted,

By: */s/ Yitzchak Kopel*
     Yitzchak Kopel

**BURSOR & FISHER, P.A.**
Yitzhak Kopel
Max S. Roberts
1330 Avenue of the America, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
          mroberts@bursor.com

*Attorneys for Plaintiffs*