**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIMBERLY SUTTON, ZAINAB SALMAN, DAVID RAMIREZ, and TYLER BAKER, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

TED FOUNDATION INC.,

Defendant.

INDEX NO. 1:23-cv-09219-DEH

**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) AND THE FIRST AMENDMENT**

# TABLE OF AUTHORITIES

**Case** **Page(s)**

*Adams v. Am. Test Kitchen, L.P.*,
No. 22-cv-11309, 2023 WL 4304675 (D. Mass. June 30, 2023)....................6

*Boelter v. Hearst Commc'ns*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)....................3, 10

*Cain v. Redbox Automated Retail, LLC*,
981 F. Supp. 2d 674 (E.D. Mich. 2013)....................8

*Canadian St. Regis Bd. of Mohawk Indians v. New York*,
146 F. Supp. 2d 170 (N.D.N.Y. 2001)....................2

*Carter v. HealthPort Techs.*,
822 F.3d 47 (2d Cir. 2016)....................3, 6

*Carter v. Scripps Ntwks., LLC*,
No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023)....................5

*Edwards v. Learfield Commc'ns*,
No. 23-cv-65, 2023 WL 8544765 (N.D. Fla. Oct. 6, 2023)....................5

*Ellis v. Cartoon Ntwk., Inc.*,
803 F.3d 1251 (11th Cir. 2015)....................4, 5

*Feldman v. Star Tribune Media Co.*,
659 F. Supp. 3d 1006 (D. Minn. 2023)....................6

*Gardener v. MeTV*,
No. 22-cv-5963, 2023 WL 4365901 (N.D. Ill. July 6, 2023)....................4, 5, 6

*Golden v. NBCUniversal Media*,
No. 22-cv-9858, 2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023)....................4, 5, 6

*Gordon & Breach Sci. Pubs. S.A. v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994)....................10

*Harty v. W. Point Realty, Inc.*,
28 F.4th 435 (2d Cir. 2022)....................3

*Hernandez v. The Container Store, Inc.*,
No. 23-cv-5067, 2024 WL 72657 (C.D. Cal. Jan. 3, 2024)....................7

*In re Hulu Privacy Litig.*,
No. 11-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)....................7

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....................4

*Kuzenski v. Uproxx LLC*,
No. 23-cv-945, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ............................................5, 6

*Lamb v. Forbes Media, LLC*,
No. 22-cv-6319, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ................................... *passim*

*Louth v. NFL Enters, LLC*,
No. 21-cv-405, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) .....................................................8

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998)...........................................................................................................2

*Petty v. Goord*,
No. 00-cv-803, 2007 WL 724648 (S.D.N.Y. Mar. 5, 2007).......................................................2

*PharmacyChecker.com v. Nat'l Assoc. of Bds. of Pharm.*,
530 F. Supp. 3d 301 (S.D.N.Y. 2021)..........................................................................................9

*Riley v. Nat'l Fed. of the Blind*,
487 U.S. 781 (1988).....................................................................................................................9

*Salazar v. Nat'l Basketball Assoc.*,
No. 22-cv-7935, 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023).............................................3, 6

*Saunders v. Hearst Tele., Inc.*,
No. 23-cv-10998, 2024 WL 126186 (D. Mass. Jan. 11, 2024)..........................................8, 10

*Solomon v. Flipps Media, Inc.*,
No. 22-cv-5508, 2023 WL 6390055 (Sept. 30, 2023) .............................................................7

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) .......................................................................................................8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).....................................................................................................................3

**Other Authorities**

Federal Rules of Civil Procedure ............................................................................................1, 2

Video Rental Privacy Act, Mich. Comp. Laws § 445.1712 .........................................................8

Restatement (2d) of Torts § 652A (1977)......................................................................................3

S. Rep. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342..............................................8

Video Privacy Protection Act, 18 U.S.C. § 2710............................................................. *passim*

Plaintiffs expect far too much leniency. First, they ask the Court to overlook egregious and fatal errors stemming from their failure to conduct an adequate pre-filing investigation and to provide the requisite notice pleading. These include numerous demonstratively false allegations in the Complaint concerning this Court's subject matter jurisdiction. Next, Plaintiffs propose to proceed under an entirely new theory of injury under Article III. They then urge the Court to "side" with an out-of-Circuit 2016 decision over several directly-on-point 2023 decisions holding that registering for a website account does not create a subscriber relationship under the VPPA. Finally, Plaintiffs would have the Court disregard the *Twombly*/*Iqbal* "plausibility" standard and presume the truth of allegations regarding TED's usage and motives that are purely speculative and that are flatly contradicted in the Complaint. That presumption is essential both for the Complaint to withstand the VPPA's "ordinary course of business" exception and for the VPPA's application here to even arguably comport with the First Amendment. As set forth herein, each of these "asks" should not be credited, and each provides an independent basis for dismissal.

## I. Plaintiffs Fail to Establish Statutory and Article III Standing.

### A. The Complaint does not provide adequate notice of the facts relevant to standing.

Plaintiffs admit to their pleading deficiencies from the outset, relying on the Merryman Declaration to concede that "[Sutton] would have watched TED videos with her account since 2017, rather than 2008"; "[Ramirez] would have watched videos with his account between September 2019 and August 2019, instead of January 2016 through October 2023"; and "[Baker] would have watched videos with his account in July 2023[.]'" Opp. at 3-4. They also do not rebut that Plaintiff Salman did not have an account. In other words, Plaintiffs ask *in an opposition brief* to course-correct an almost decade-off allegation regarding Plaintiff Sutton's usage, a reduction of Plaintiff Baker's usage from eighteen months to one day (July 31, 2023), and facts fatal for the remaining two plaintiffs. Such errors cannot fairly be chalked up to memory lapse.

This scenario is precisely why Federal Rules of Civil Procedure 8(a) and 11 impose notice pleading and pre-filing investigation requirements. Had Plaintiffs alleged or amended their Complaint to include the foregoing facts, multiple grounds for dismissal would have been evident "on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). Namely, because Plaintiff Ramirez's last activity occurred in 2019, his claims would fall outside the VPPA's two-year statute of limitations, *see* 18 U.S.C. § 2710(c)(3). As he was the only named Plaintiff to use TED's iOS app, no plaintiff would have standing to represent iOS users. And Plaintiff Salman would be dismissed from the start because she never had a TED account.

Plaintiffs do not use their Opposition to present *any* facts refuting the Merryman Declaration. Instead, they sidestep the issue by claiming that the declaration "amounts to a 'factual attack'" that should be converted to a summary judgment or Rule 12(b)(6) motion. Opp. at 4.[1] But this Court expressly allows Rule 12(b)(1) declarations refuting jurisdictional facts and, if a defendant thereby calls into question a plaintiff's standing, the burden shifts to the plaintiff who "[i]n opposition to such a motion, . . . will need to come forward with evidence of their own to controvert that presented by the defendant[.]" *Lamb v. Forbes Media*, 2023 WL 6318033, at *4 (S.D.N.Y. Sept. 28, 2023) (quoting *Carter v. HealthPort Techs.*, 822 F.3d 47 (2d Cir. 2016)). The proper course of action here was for Plaintiffs to rebut TED's proof in their opposition, not to double down and insist that the Court must defer to or ignore speculative and demonstrably false allegations. The Court should not indulge this disregard for the pleading standards and associated burdens, and should now dismiss the Complaint with prejudice.

[1] Plaintiffs' proposal misconstrues the "conversion rule," which applies only when a fact dispute is "clearly intertwined with the merits." *Canadian St. Regis Bd. of Mohawk Indians v. N.Y.*, 146 F. Supp. 2d 170, 182, 183 n.12 (N.D.N.Y. 2001) (converting challenge to status as a tribe); *see also Petty v. Goord*, 2007 WL 724648, at *4 (S.D.N.Y. Mar. 5, 2007) (converting challenge under exhaustion requirement). The declaration here focuses only on factual inconsistencies concerning Plaintiffs' account details that raise questions as to Plaintiffs' standing under the VPPA.

### B. The Complaint does not allege concrete injury under *TransUnion*.

Plaintiffs also persist in deriving standing solely from a statutory violation, in contravention of *TransUnion*'s bright-line rule that an "injury in fact" requires more than an "injury in law." 594 U.S. 413, 427 (2021); *see also Harty v. W. Point Realty*, 28 F.4th 435, 443 (2d Cir. 2022) (requiring harm "beyond the statutory violation itself"). Starting with the sweeping premise that "Violations Of The VPPA Give Rise To Article III Standing," Plaintiffs ask the Court to *assume* concrete injury here because it was found in other VPPA cases. Opp. at 5-6. But Plaintiffs ignore the facts and reasoning in those cases: in each, the *monetization* of personal information—whether by targeted advertising in *Salazar, Martin*, and *Eichenberger* or data mining in *Boelter*, *Carter*, and *Perry*—contributed to what made the alleged harm objectively offensive and therefore concrete.[2] TED's relationships do not involve the same public disclosure or clear profiteering motivations.

Plaintiffs also do not refute that neither public disclosure nor intrusion upon seclusion—the two "traditionally recognized" torts through which prior VPPA cases found standing—applies here. Instead, they assert that "the right of the individual to 'control of information concerning his or her person'" is a distinct harm that can establish concrete injury. Opp at 6. They are incorrect. Common law classifies four "traditionally recognized" harms stemming from the right to privacy: (1) intrusion upon seclusion; (2) appropriation; (3) public disclosures of private fact; and (4) false light. Restatement (2d) of Torts § 652A.[3] No court has found that a loss of "control of information" alone constitutes a privacy harm. In fact, courts have noted the logical fallacy of finding concrete

[2] *E.g.*, *Salazar v. Nat'l Basketball Assoc.*, 2023 WL 5016968, at *6 (S.D.N.Y Aug. 7, 2023) ("A reasonable person could find it offensive that…commercial parties could profit from targeted advertisements."); *Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016) (allegations of "selling [PI] to third parties, and [] providing it to 'data mining' companies" established injury based on "their rights under the VRPA, along with economic harm").

[3] Plaintiffs' argument that TED's Privacy Policy does not secure "consent" under § 2710(b)(2) is a red herring. TED does not argue consent. It invokes its Privacy Policy to show that its disclosures are not objectively offensive under "intrusion upon seclusion" because TED "gives notice of and explains the scope of and reasons for the disclosures." Mot. at 10.

injury on that basis. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) ("[C]ourts must examine the nature of the specific information at issue to determine whether privacy interests were implicated at all. Otherwise, . . . any situation in which one loses control of information[] would confer standing[.]"). Plaintiffs lack standing because they fail to allege concrete injury.

## II. The Complaint Does Not Adequately Allege the Elements of a VPPA Claim.

### A. Plaintiffs fail to establish "subscriber"—and by extension "consumer"—status.

Turning to the merits of their claims, Plaintiffs insist that providing their names and e-mail addresses to register for a TED account was sufficient to create a subscriber relationship under the VPPA. Were that the case, the VPPA's larger "consumer" requirement would be rendered obsolete because it could be satisfied by reference to the very information whose disclosure the law prohibits. The Complaint falls short of pleading facts sufficient to establish "subscriber" status.

As an initial matter, Plaintiffs' first argument that a subscribership forms by downloading a mobile app has been "overwhelmingly" rejected in this District, in favor of a showing of a user's "ongoing commitment or relationship" to the video services provider. *Golden v. NBCUniversal Media*, 2023 WL 5434378, at *9-10 (S.D.N.Y. Aug. 23, 2023). Courts "have largely drawn upon the Eleventh Circuit's persuasive reasoning in *Ellis* [*v. Cartoon Network*] as to the application of the statutory term to these fact patterns." *Id.* at *10 (collecting cases). Under *Ellis*, "[s]ubscriptions involve some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content." 803 F.3d 1251, 1256 (11th Cir. 2015).

The *Ellis* factors weigh heavily against Plaintiffs' subscriber status. Plaintiffs do not allege to have paid for TED accounts, and there is no basis for their circular argument that providing "personal information" itself constitutes payment. *See Gardener v. MeTV*, 2023 WL 4365901, at *1, *4 (N.D. Ill. July 6, 2023) (finding "[n]either set of plaintiffs paid for this privilege" or "exchanged anything of value," despite providing "at least" names and e-mail addresses); *Forbes*,

2023 WL 6318033, at *2, *13 (same); *Edwards v. Learfield Commc'ns*, 2023 WL 8544765, at *6 (N.D. Fla. Oct. 6, 2023) (providing "minimal personal information" bore on registration, not payment). So too for the notion that TED's website policies created ongoing commitments to TED, *see* Opp. at 12; cases assessing "commitment" look to whether, as here, a user "can decide to never visit the [] website ever again—and that decision will have zero consequences, costs, or further obligations." *Golden*, 2023 WL 5434378, at *11. Next, while TED Talks are "delivered" to any member of the public who clicks on them, Plaintiffs do not allege that their accounts were a subscription *for* or *to* the delivery of video content. *E.g.*, *Gardener*, 2023 WL 4365901, at *4 ("Plaintiffs here were subscribers to a website, 'not subscribers to audio visual materials,' as they 'were free to watch or not watch [defendant's] videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site.'"); *Forbes*, 2023 WL 6318033, at *11 (same). Like in *Kuzenski v. Uproxx*, the word "video" (or "talks," for TED) is not alleged to appear *anywhere* during enrollment. 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023); *see also* TED Enrollment Page, https://auth.ted.com/users/new; *Carter v. Scripps Ntwks.*, 2023 WL 3061858, at *5 n.4 (S.D.N.Y. Apr. 24, 2023) (taking judicial notice of information on a party's website).

Lastly, no case has found that account features like those listed in the Complaint offer "access to restricted content," nor are such features new in the timeline of VPPA cases. Account holders are not alleged to access *any* exclusive video content, and to allow a lack of internet service to serve as the requisite restriction is nonsensical. *See Ellis*, 803 F.3d at 1257 (app offered "quicker access to the website's content," but not "exclusive or restricted content"); *Edwards*, 2023 WL 8544765, at *6 (same for linked newsletter). The remaining features either are "social media type benefits," *Kuzenski*, 2023 WL 8251590, at *5, or, in the case of video suggestions, "simply notif[y] readers about [] Website content—content available to anyone." *Edwards*, 2023 WL 8544765, at *6; *see also Carter*, 2023 WL 3061858, at *1, *6 (no subscriber status though newsletters "drive

traffic to HGTV's website" and "may entice or encourage recipients to view hgtv.com videos").

Plaintiffs' efforts to distinguish *Gardener*, *Forbes*, and *Kuzenski* fall short. Each applies the reasoning of *Carter*, *Salazar*, or *Golden* to conclude that registering for an account on a video service provider's website did not create a subscriber relationship. Several of the account features in *Kuzenski*—like comments and newsletter links—were tied to video content. *See* No. 23-cv-945 (C.D. Cal.), ECF No. 43 at 2, 6. The court found that those features did not "enhance and affect [] viewing." 2023 WL 8251590, at *5. Likewise in *Gardener*, it was critical that the account did not give "special access to certain content." 2023 WL 4365901, at *4. And in *Forbes*, Judge Carter observed that an account was not "required to access [] videos" and did not bestow "access to [] videos . . . that any member of the public . . . would not otherwise have." 2023 WL 6318033, at *13. He was unmoved by the fact that account holders had "unbridled" video access, while non-account-holders were limited to four page views, *see id.*—a fact far closer to an access restriction than is present here. *See also Salazar*, 2023 WL 5016968, at *9 (NBC.com subscribers gained "access to a variety of [] Video Media," but plaintiff did not allege "the video content he accessed was exclusive"). Plaintiffs' entreaty that the Court depart from this line of cases and instead "side" with *Yershov*, *see* Opp. at 15, acknowledges that these decisions counsel for dismissal.

**B. Plaintiffs fail to plausibly allege disclosures outside the ordinary course of business.**

Plaintiffs' principal rebuttal on the ordinary course of business ("OCOB") exception is that it cannot be considered on the pleadings. But as their own cases make clear, a statutory defense can be grounds for dismissal when "the facts establishing the defense are clear from the face of the complaint as supplemented by 'matters fairly incorporated within it and matters susceptible to judicial notice.'" *Adams v. Am. Test Kitchen*, 2023 WL 4304675 at *8 (D. Mass. June 30, 2023); *see also Feldman v. Star Tribune*, 659 F. Supp. 3d 1006 (D. Minn. 2023) (same). This District has also emphasized repeatedly that plaintiffs *must* address § 2710(b)(2) in the pleadings. *E.g.*,

*Solomon v. Flipps Media*, 2023 WL 6390055, at *2 (Sept. 30, 2023) ("[T]o plead a plausible claim under [§] 2710(b)(1), a plaintiff must allege that . . . (4) the disclosure was not authorized by [§] 2710(b)(2)."); *Forbes*, 2023 WL 6318033, at *5 (same). Here, Plaintiffs do not just plead the bare minimum; they clearly allege facts that make the OCOB exception ripe for consideration now.

The Complaint is replete with source material showing that TED employed Leanplum, Mixpanel, and OpenWeb for purposes that fall squarely within the OCOB exception. *See* Mot. at 18; ECF No. 1 ¶¶ 74-94 (OpenWeb used solely for the functionality of TED's "comment" feature; Leanplum and Mixpanel to monitor user engagement and retention; manage and personalize TED content; update and maintain the website; and safeguard user data). Though Plaintiffs speculate—without any supporting facts—that the vendors *also* provided TED with marketing and advertising services, such naked assertions are not plausibly alleged and are contradicted by *all* substantive allegations about the vendors' services to TED. In fact, despite Plaintiffs' extensive references to a TED case study, quotes from TED leadership, and TED policies and FAQs, *marketing and advertising are not mentioned once*, nor are *any* financial or economic motivations or outcomes. *Cf. Hernandez v. The Container Store*, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024) ("Plaintiff's references to Defendant's 'monetizing' the hosted 'video content' do not include allegations that Defendant sells such content or even receives remuneration from TikTok[.]").

Plaintiffs are wrong that courts have found services like those by TED's vendors to fall outside the OCOB exception. *In re Hulu Privacy Litigation* involved disclosure of user information to Facebook, allowing Facebook "to leverage its platform and gain information about its users." 2014 WL 1724344, at *16 (N.D. Cal. Apr. 28, 2014). As Plaintiffs themselves argue, disclosure to Facebook involves "completely different technology" from the case at hand. Opp. at 9. Hulu was also allegedly using its vendor comScore to transmit "information (or metrics) about its 'audience size'" to advertisers, who paid Hulu based on the number of ad views. *See* 2014 WL 1724344, at

*3. Similarly, *Louth v. NFL Enterprises* involved disclosures to Google's Anvato platform to link users to their Google "advertising ID" and thereby "maximize advertising revenue." 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022). And in *Saunders v. Hearst Television*, the data was sold to Google ad-tech platform DoubleClick, "allowing [Hearst] to provide advertisements tailored to specific users" and "solely motivated by the desire for profit." 2024 WL 126186, at *4-5 & n.8 (D. Mass. Jan. 11, 2024).[4] The Complaint does not allege analogous facts. Rather, its disclosures closely align with the customer service functions found in *Sterk v. Redbox Automated Retail*, 770 F.3d 618 (7th Cir. 2014), to fall well within the OCOB exception. *See* Mot. at 16.

Finally, Plaintiffs' arbitrary distinctions—that "third parties may not become involved with analyzing [customer records]" or that the VPPA differentiates "passive information storage" from sites that analyze information, *see* Opp. at 17—have no support in the case law or the VPPA. In fact, the the VPPA's legislative history suggests just the opposite. *See* S. Rep. No. 100-599 at 13-14 (1988) ("This [OCOB] subsection takes into account that video tape service providers may use third parties in their business operations. . . . [and] allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'"). The Complaint fails to plausibly allege facts that withstand the OCOB exception.

**III. The VPPA's Application Here Violates the First Amendment.**

Plaintiffs' First Amendment argument likewise requires blind deference to their assertions, this time that TED's disclosures were "commercial" because they were made solely to "increase 'revenue from advertisements.'" Opp. at 19. Plaintiffs also ignore that TED mounts an as-applied

[4] *Cain v. Redbox Automated Retail* is postured differently: it involved Michigan's VRPA, which *does not have an OCOB exception*. 981 F. Supp. 2d 674 (E.D. Mich. 2013). The court did not decide whether the VRPA exception for disclosures "otherwise provided by law" could encompass an OCOB defense. *Id.* at 685. Its cursory observation that the services did not appear to be business functions should have no bearing because the exception was not squarely before the court.

—not a facial—challenge. There is no avoiding that the vendors, usage, and even the defendant here are distinct from those in other VPPA cases, almost all of which involve disclosures *directly to advertising platforms* for the express purpose of data monetization and/or financial gain. The VPPA's application here would be the furthest extension of the statute ***by any court***, and would both restrict and have a profound chilling effect on non-commercial speech.

Every case to address the issue has found that the VPPA targets commercial speech, which is "expression related solely to the economic interests of the speaker and its audience" or that "does no more than propose a commercial transaction.'" *See* Mot. at 20. Here, the Complaint lists many uses not alleged to be spurred solely by economic gain. Even if there *were* indicia of commercial use, three factors bear on whether speech featuring both commercial and noncommercial elements receives reduced scrutiny: "(1) it is an advertisement; (2) it refers to a specific product or services; and (3) the speaker has an economic motivation[.]" *PharmacyChecker.com v. Nat'l Assoc. of Bds. of Pharm.*, 530 F. Supp. 3d 301, 355 (S.D.N.Y. 2021). The speech here was not advertising and did not involve products or services for sale; it "simply provide[d] information" and did not "propose a commercial transaction." *Id.* Under the third factor, although TED does not argue that the VPPA is *per se* unconstitutional as applied to non-profits, TED's undisputed status as a non-profit with an educational mission undermines the plausibility of allegations that its speech here related solely to its financial interests. At the very least, Plaintiffs must come forward with more to establish the plausibility of TED's allegedly commercial motive, which they have not done.

This is bolstered by *Riley v. National Federation of the Blind*, in which the Supreme Court found that charitable fundraising efforts were "inextricably intertwined with otherwise fully protected speech." 487 U.S. 781, 796 (1988). Since that time, courts regularly accord heightened protection to otherwise commercial speech by non-profit groups. *E.g.*, *PharmacyChecker.com*, 530 F. Supp. 3d at 355 ("That a nonprofit 'stood to benefit from [its statements]—even that they

intended to benefit—is insufficient by itself to turn the [statements] into commercial speech.'"); *Gordon & Breach Sci. Pubs. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (collecting Supreme Court cases) ("Non-profit organizations must be free to participate fully in the marketplace of ideas without fear of sanctions, even if such participation redounds to their financial benefit. To hold otherwise would be to squelch the expression of facts and opinions which might not otherwise find ready expression through commercial media.").[5]

The VPPA's overbreadth, vagueness, and unconstitutionality as applied here, *see* Mot. at 22-24, threatens to have a profound ripple effect on other entities' constitutionally protected speech. Specifically, if outsourcing data analytics is under fire—and if baseless allegations concerning the motivations therefor can be sufficient to send a case to discovery and result in hundreds of thousands of dollars in litigation costs—individuals and businesses like TED will have their speech chilled and their operational costs skyrocket. The "core" expressive content hosted by such platforms, which is *essential* to a functioning democracy, will be chilled by extension. *See Gordon*, 859 F. Supp. at 1543 ("[G]ain[ing] access to court-sanctioned discovery" absent "a prima facie showing that speech which appears fully protected is in fact undeserving of full First Amendment protection . . . could cast a substantial chill on the 'robust exchange of ideas.'").

Although a party could perhaps mount a viable constitutional challenge under lesser facts, the "trifecta" here—(1) a non-profit (2) disclosing to closed-system service providers, (3) for the purpose of website support untethered from advertising—leaves no doubt that the VPPA should not apply. Further, the Court should avoid this question entirely by construing "subscriber" or the OCOB exception to bar Plaintiffs' claims, under the doctrine of constitutional avoidance.

---

[5] This lies in stark contrast to the cases cited by Plaintiffs. In *Boelter*, the defendant was "selling demographic information about its consumers to 'data miners and other third parties,' which allows for targeted marketing, advocacy, and solicitations[.]" 192 F. Supp. 3d at 435. Its speech—data showing "individuals who purchase [] products"—was deemed commercial and constitutional as applied to "sellers" of such data. *Id.* at 445-54; *see also Saunders*, *supra* p.8.

Dated: January 24, 2024

Respectfully submitted,

By: <u>/s/ Carter C. Simpson</u>
Carter C. Simpson (*pro hac vice*)
Ryan P. Phair (*pro hac vice*)
Emma L. Hutchison (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M Street, N.W.
Washington, DC 20036
cartersimpson@paulhastings.com
ryanphair@paulhastings.com
emmahutchison@paulhastings.com
Telephone: 1(202) 551-1753
Facsimile: 1(202) 551-0253

*Attorneys for Defendant TED Foundation Inc.*

‘

**<u>CERTIFICATE OF SERVICE</u>**

I, Carter C. Simpson, hereby certify under penalty of law that on January 24, 2024, I caused a copy of the foregoing to be served electronically on all counsel of record via ECF.

<u>/s/ Carter C. Simpson</u>
Carter C. Simpson