UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIMBERLY SUTTON, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>TED FOUNDATION, INC.,<br><br>　　　　　　　　　Defendant. | 23 Civ. 9219 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

　　　Plaintiffs bring this putative class action alleging that Defendant TED Foundation, Inc. ("TED" or "Defendant") violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *See generally* Compl., ECF No. 1.  Defendant moves to dismiss the Complaint in its entirety, arguing that Plaintiffs do not have standing under Rule 12(b)(1) and that the Complaint fails to state a claim under Rule 12(b)(6).[1]  *See generally* Def.'s Mem. of L. in Supp. of Mot. to Dismiss ("Def.'s Br."), ECF No. 20.  For the reasons discussed herein, Defendant's Rule 12(b)(1) motion is **DENIED**, but its Rule 12(b)(6) motion is **GRANTED**.  However, the Court also **GRANTS** Plaintiffs leave to amend.

BACKGROUND

　　**A.　Factual Background**

　　"In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence— from the complaint and from the exhibits attached thereto." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).[2]  "In assessing the plausibility of the claim, [the Court]

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

[2] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

must accept factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Peretti v. Authentic Brands Grp. LLC*, 33 F.4th 131, 137 (2d Cir. 2022).

Defendant TED Foundation, Inc. is a non-profit organization that produces pre-recorded videos accessible to the public via browser on its website TED.com and via the TED application on Android and Apple mobile devices. Compl. ¶ 4. TED allows users to create accounts, which "are free of charge," to "receive personalized recommendations, sync videos across all of a user's devices, download videos to watch offline, and add talks to [the user's] list to watch later, among other benefits." *Id.* ¶¶ 12-13. To create an account, TED users must provide their names and email addresses. *Id.* ¶ 12.

TED shares users' personally identifiable information (names, email addresses, videos viewed, and user IDs) with third-party service providers Leanplum, Mixpanel, and OpenWeb. *See id.* ¶¶ 5, 19, 74, 78, 82, 88, 92, 94, 107-125. It uses Leanplum's built-in tools and analytics to "collect and analyze user data" and "understand[] how different mobile app users engage with different content," with the ultimate goal of increasing Defendant's user base by "target[ing] different users with different marketing and advertising strategies." *See id.* ¶¶ 22, 74-75, 89-91. It uses Mixpanel to "analyze user metrics, view how users convert at each step, and monitor growth, engagement, and retention," *id.* ¶¶ 78, 93, with the goal of using that data to "ultimately retain[] a larger user base," *id.* ¶ 79. Finally, TED transmits its users' personal data to OpenWeb to analyze users' information, "deliver[] personalized and targeted content to users," and "generate[] insights that lead to increased monetization and other business outcomes." *Id.* ¶¶ 82-84, 94. TED receives revenue in part from advertisements to users. *Id.* ¶ 14.

Three of the named Plaintiffs—Kimberly Sutton, Zainab Salman, and David Ramirez—are individuals who created a TED account and downloaded the TED App to watch TED videos

2

on their phones. *See id.* ¶¶ 103, 109, 115-116. One Plaintiff—Tyler Baker—is an individual who accessed and created a free TED account to watch videos on the website. *See id.* ¶ 121.

### B. Statutory Background

The VPPA was enacted in 1988, after a newspaper published a profile based on Supreme Court nominee Judge Robert Bork's video rental history. *See Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 93, 96-97 (S.D.N.Y. 2023) (citing S. Rep. No. 100-599, at 5 (1988)). It "creates a private right of action for plaintiffs to sue persons who disclose information about their video-watching habits." *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 239 (S.D.N.Y. 2023). The VPPA states that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b)(1). "To state a claim under § 2710(b), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute." *Martin v. Meredith Corp.*, No. 22 Civ. 4776, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)).

The Act defines the following terms relevant here:

(1) "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider; . . .

(3) "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and

(4) "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]

18 U.S.C. § 2710(a).  "In 2013, Congress amended the pre-Internet VPPA to 'reflect the realities of the 21st century,' but it did not alter any of the VPPA's substantive definitions." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (quoting 158 Cong. Rec. H6849-01 (daily ed. Dec. 18, 2012)).

## DISCUSSION

### A. Standing

#### 1. Legal Standard

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it[.]" *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-17 (2d Cir. 2015).  To satisfy the constitutional requirements of Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).  "[A] plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012).

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).  "Congress may create causes of action for plaintiffs to sue defendants who violate . . . legal prohibitions or obligations.  But under Article III, an injury in law is not an injury in fact." *Id.* at 427.  Thus, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's

4

statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *Id.* at 417 (quoting *Spokeo*, 578 U.S. at 341). Such harms include "various intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 425.

### 2. Application

The parties dispute whether Plaintiffs have standing to bring suit. The Court holds that they do, as "[t]he Complaint pleads a concrete, particularized injury to a legally protected interest of [Plaintiffs']: the disclosure of [their] video viewing history [and other personal information] to [third parties]." *Collins v. Pearson Educ., Inc.*, No. 23 Civ. 2219, 2024 WL 895316, at *3 (S.D.N.Y. Mar. 1, 2024).

Defendant makes three primary arguments why Plaintiffs fail to allege facts to demonstrate standing. As discussed below, each fails.

First, Defendant argues in essence that because Plaintiffs did not identify, e.g., "any specific video that any Plaintiff viewed on [TED's] Website or Apps," the allegations are insufficiently specific to establish standing. Def.'s Br. 6-7; Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") 3-4, ECF No. 32. But "[v]iewing the Complaint's allegations in their entirety, the[] [disputed] details are not needed to allege that [Plaintiffs] suffered an injury in-fact." *Collins*, 2024 WL 895316, at *3. Plaintiffs allege that TED disclosed their names, email addresses, and viewing history, without their consent, to Leanplum, Mixpanel, and OpenWeb. *See* Compl. ¶¶ 149, 153, 161, 165. "*TransUnion* specifically mentioned 'disclosure of private information' as one of the intangible harms that was historically recognized as a legal injury." *Salazar*, 685 F. Supp. 3d at 240 (citing 594 U.S. at 425). Thus, "[e]ven without the names of

5

specific videos and the like, [the Complaint] adequately alleges concrete injury." *Collins*, 2024 WL 895316, at *3 (citing *Carter*, 670 F. Supp. 3d at 90).

Second, Defendant contends that because its own investigation "to locate records relating to each Plaintiff revealed information materially contrary to the allegations in the Complaint," Plaintiffs failed to allege standing. *See* Def.'s Br. 7; Def.'s Reply 1-2. For instance, TED states that it found no record of any account associated with one named Plaintiff's email address. *See* Def.'s Br. 7. Defendants are correct that the Court may go outside of the pleadings to consider such extrinsic evidence in deciding this motion. *See Lamb v. Forbes Media LLC*, No. 22 Civ. 6319, 2023 WL 6318033, at *8 (S.D.N.Y. Sept. 28, 2023) ("The Court agrees with Defendant that its extrinsic evidence is material insofar that it contradicts Plaintiffs' allegations that they ever requested or obtained specific video materials," which contradiction, in turn, "creates a jurisdictional dispute because there is no concrete harm without disclosure of private information"); *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (stating that the district court "properly considered evidence outside the pleadings" where there were "jurisdictional facts in dispute"). But here, Defendant's proffered evidence does not undermine Plaintiffs' plausible allegations that at least one putative class member created a TED account and watched a TED video on the TED website or app during the relevant period. *See, e.g.*, Merryman Decl. ¶¶ 8, 13-14 (disputing only the dates on which certain named Plaintiffs created TED accounts or interacted with the TED website and app), ECF No. 21. Accordingly, Plaintiffs may "rely on the allegations in their pleading" to establish standing, as "the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that

6

are themselves sufficient to show standing." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017).[3]

Third, Defendant argues that Plaintiffs plead only a statutory injury, not an actual "concrete injury under the *TransUnion* standard." *See* Def.'s Br. 8. While Defendant concedes that VPPA claims can derive from public disclosure of private information, it argues that the tort is inapplicable here, where TED had confidentiality agreements with Leanplum, Mixpanel, and Open Web that would have prevented the public at large from seeing Plaintiffs' information. *See* Def.'s Br. 9. This argument is unavailing, as "[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the information outlined." *Salazar*, 685 F. Supp. 3d at 241 (citing Restatement (Second) of Torts § 652B (1977)). "[T]hat Defendant purposefully shared [Plaintiffs'] private viewing information [and other personal information] with [] third part[ies] without Plaintiff[s'] knowledge or consent is akin to that type of intrusion into his privacy [recognized by tort law]," *id.*, and it is sufficient at this stage of the litigation to allege a concrete injury. It is therefore immaterial whether, as Defendant argues, Plaintiffs have alleged that disclosure of their information would have been "highly offensive" to a reasonable person. Def.'s Br. 9-10. Plaintiffs have alleged concrete harms sufficient to confer standing based solely on the "intrusion" into their private information. *Salazar*, 685 F. Supp. 3d at 241.

In sum, Plaintiffs have plausibly alleged that at least one putative class member has suffered a harm (i.e., the wrongful disclosure by TED of their private information to third parties) that could be redressed by the Court's intervention. *See, e.g.*, Compl. ¶¶ 35-36, 38-39,

---

[3] Moreover, Plaintiffs represent that "[t]o the extent Defendant's investigation is correct" and contradicts facts alleged by Plaintiffs regarding, e.g., exact dates of viewing and account creation, "Plaintiffs can amend their Complaint to reflect [corrected] information." Pls.' Opp'n 3 n.2, ECF No. 28. As discussed *infra*, the Court will allow Plaintiffs to amend their pleadings.

41-42, 44, 48, 52, 54, 66, 68, 69. Their pleadings are sufficient at this stage of the litigation to allege standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss[,] [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.").[4]

### B. Failure to State a Claim

#### 1. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

#### 2. Application

The Court concludes that Plaintiffs' claims fail as a matter of law because the Complaint falls short of pleading that Plaintiffs were "consumer[s]" within the meaning of the VPPA. *See* 8

---

[4] Lastly, Plaintiffs request "leave to amend to come forth with evidence that [Plaintiff Salman] was a TED account holder." Pl.'s Opp'n 5 n.3. As discussed *infra*, that request is granted.

U.S.C. § 2710(a)(1). As discussed, the VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* Of these, the Complaint alleges that Plaintiffs Sutton, Sulman, and Ramirez are "subscribers because they registered, committed, and expressed association with the TED App." Compl. ¶ 148. Similarly, Plaintiff Baker is alleged to have subscribed to TED by "register[ing], commit[ting], and express[ing] association with [TED's] Website." *Id.* ¶ 160. All named Plaintiffs have provided their names and email addresses to TED. *Id.* ¶¶ 147, 149, 161. All have viewed pre-recorded content on TED's website and/or mobile app. *Id.* ¶¶ 103, 109, 116, 121.

The VPPA does not define the term "subscriber," *see generally* 18 U.S.C. § 2710, and the Second Circuit has yet to provide guidance on the term's proper interpretation. Accordingly, courts in this District "have largely drawn upon the Eleventh Circuit's persuasive reasoning in *Ellis* [*v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015),] as to the application of the statutory term to these fact patterns." *Golden*, 688 F. Supp. 3d at 164 (collecting cases). *Ellis* held that "[s]ubscriptions involve some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Ellis*, 803 F.3d at 1256 ("*Ellis* factors"). The Court considers each factor in turn, with one caveat described below.

**Payment**. It is undisputed that Plaintiffs did not pay money for their TED accounts. But Plaintiffs contend that the "personal information" that they have provided in order to receive their TED accounts constitutes payment. *See* Pl.'s Opp'n 11. Courts applying the *Ellis* factors have not treated such personal information as a form of "payment." *See, e.g.*, *Gardener v. MeTV*, 681 F. Supp. 3d 864, 866, 869 (N.D. Ill. 2023) (finding "[n]either set of plaintiffs paid for this privilege" or "exchanged anything of value," despite providing "at least" names and e-mail addresses); *but see* Stacy-Ann Elvy, *Paying for Privacy and the Personal Data Economy*, 117

9

Colum. L. Rev. 1369 (2017) (describing the "data-as-payment" business model, in which "[d]ata are traded (whether knowingly or unknowingly) by the consumer to acquire [a] 'free' product").

Ultimately, the Court need not at this time resolve the question whether personal data may, under at least some circumstances, be a form of "payment," as this factor is non-dispositive, *see Ellis*, 803 F.3d at 1256 (noting that "the term 'subscriber' is not preceded by the word 'paid'" in the VPPA, and holding that "payment is not a necessary element of subscription," as "there are numerous periodicals, newsletters, blogs, videos, and other services that a user can sign up for (i.e., subscribe to) and receive for free"). As explained below, given the particular allegations here, the Court bases its decision in this case on the application of the other factors set forth in *Ellis*.

**Registration**. At least some of the named Plaintiffs undisputably have TED accounts. *See supra*. This factor weighs in favor of Plaintiffs.

**Commitment**. A non-subscriber is one who is "free to delete the app without consequences whenever he likes, and never access its content again." *Ellis*, 803 F.3d at 1257; *see also Carter*, 670 F. Supp. 3d at 98-99 (weighing this factor against plaintiffs who "were free to watch or not watch hgtv.com videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site"). Here, Plaintiffs have stated no specific obligation to TED. *See generally* Compl. Accordingly, they are not "committed" to TED in any substantive way, and this factor weighs against Plaintiffs.

**Delivery**. Plaintiffs allege that "TED delivers video content to all account holders." Pl.'s Opp'n 13. Plaintiffs state neither how the videos are delivered nor distinguish the access they receive as account holders from that available to any non-registrant. Because Plaintiffs do not allege that their accounts were a subscription for or to the delivery of video content, this factor, too, weighs against them. See *Golden*, 688 F. Supp. 3d at 165 (noting a plaintiff's failure to

10

allege that "access of these videos was facilitated in any way by her having signed up for the newsletter" and weighing this factor against her).

**Expressed Association**. Defendant assigned Plaintiffs "unique user IDs [that] allow Defendant to identify and track an individual user." Compl. ¶ 43. This factor weighs in favor of Plaintiffs.

**Access to Restricted Content**. Plaintiffs argue that their TED accounts provide them with access to restricted content in that they are able "to download videos and play them offline." Pl.'s Opp'n 13. The Court disagrees. Having the ability to download videos is different in kind from having "special access to certain content" unavailable to non-account-holders. *See Gardener*, 681 F. Supp. 3d at 869. Here, "[t]here is no allegation that a user must log in to watch [any] video, and Plaintiff[s] do[] not allege that the video content [they] accessed was exclusive to a subscribership." *Salazar*, 685 F. Supp. 3d at 245; *see generally* Compl. Accordingly, this factor weighs against Plaintiffs. *Compare Lamb*, 2023 WL 6318033, at *13 (weighing this factor against plaintiff where plaintiff did not state that an account was required to access videos), *with Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023) (plaintiff "registered for a PBS account and provided Defendant her personal information, including her name, address, email, IP address and cookies" and "[i]n return . . . received periodic newsletters and emails," which the court noted contained "restricted content").

Taken together as a whole, the *Ellis* factors considered by the Court weigh against Plaintiffs' asserted subscriber status. Because "the Court does not find that Plaintiff[s'] subscription to [or registration of an account through] Defendant's [website and app] rendered [them] [] consumer[s] of goods or services from a video tape service provider under the VPPA,"

the Court grants Defendant's motion to dismiss Plaintiffs' VPPA claim. *See Salazar*, 685 F. Supp. 3d at 246.[5]

### C. Leave to Amend

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he Second Circuit has construed this 'liberal standard' to bespeak a 'strong preference for resolving disputes on the merits.'" *Golden*, 688 F. Supp. 3d at 167 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)). Additionally, the circumstances that often counsel against granting leave to amend—such as undue delay, bad faith, dilatory motive, or futility—are not present here. *Loreley Fin. (Jersey) No. 3 Ltd.*, 797 F.3d at 190. Rather, the Court has determined that it is at least possible that amendment could fortify Plaintiffs' claim that they are subscribers as defined by the VPPA. For instance, Plaintiffs allege that they are statutory subscribers because they "committed[] and expressed association with the TED App." Compl. ¶ 148. The Court will permit Plaintiffs to amend the Complaint to add factual detail to these and other allegations relevant to the *Ellis* factors, as discussed *supra*. Plaintiffs shall also amend pleadings relevant to the Court's standing analysis, to ensure the factual accuracy of their allegations.

## CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Defendant's Rule 12(b)(6) motion to dismiss.[6] However, it also **GRANTS** Plaintiffs leave to amend.

---

[5] Because the Court concludes that Plaintiffs fail to state a claim under the VPPA, it does not address Defendant's alternative argument that Plaintiffs fail to allege sufficient facts to show that any disclosures were not made incident to TED's ordinary course of business. *See* Def.'s Br. 15-18.

[6] Given that the Court now grants Defendant's motion to dismiss, it does not address the constitutional issues raised by the parties' briefs. *See generally* United States of America's Mem. of L. in Defense of the Constitutionality of the VPPA, ECF No. 44.

The Clerk of Court is respectfully requested to terminate ECF No. 19. Plaintiffs shall file amended pleadings within **thirty (30) days**. Failure to do so will lead to the dismissal of their case.

SO ORDERED.

Dated: September 11, 2024
       New York, New York

                                              DALE E. HO
                                     United States District Judge