**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIMBERLY SUTTON, ZAINAB SALMAN, DAVID RAMIREZ, and TYLER BAKER, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

TED FOUNDATION INC.,

Defendant.

INDEX NO. 1:23-cv-09219-DEH-RWL

**REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) AND THE FIRST AMENDMENT**

# TABLE OF CONTENTS

**Page**

**I. Plaintiffs Baker and Salman Lack Standing, and Count Two Should Be Dismissed. ............... 1**

A. No Plaintiff Has Standing to Bring Count Two Concerning TED's Website. ........................... 1

B. Plaintiff Salman Does Not Have Standing to Bring Count One. ............................................... 2

**II. The FAC Does Not Adequately Allege the Elements of a VPPA Claim. .................................... 4**

A. Plaintiffs Fail to Establish "Subscriber"—and by Extension "Consumer"—Status. ................. 4

B. Plaintiffs Fail to Plausibly Allege That the Ordinary Course of Business Exception Does Not Apply. ........................................................................................................................................ 6

**III. The VPPA's Application Here Violates the First Amendment. .................................................. 8**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ... 9

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ... 10

*Edwards v. Learfield Commc'ns*,
No. 23-cv-65-AW-MAF, 2023 WL 8544765 (N.D. Fla. Oct. 6, 2023) ... 5

*Ellis v. The Cartoon Network*,
803 F.3d 1251 (11th Cir. 2015) ... 4, 5, 6

*Fan v. NBA Props. Inc.*,
No. 23-cv-05069-SI, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ... 10

*Gordon & Breach Sci. Pubs. v. Am. Inst. of Physics*,
859 F. Supp. 1521 (S.D.N.Y. 1994) ... 10

*Hernandez v. The Container Store*,
No. 23-cv-05067, 2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ... 6, 7

*Kuzenski v. Uproxx LLC*,
No. 23-cv-00945-WLH-AGR, 2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ... 5

*Lamb v. Forbes Media LLC*,
No. 22-cv-06319-ALC, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2024) ... 6

*Louth v. NFL Enterprises*,
No. 21-cv-00405-MSM-PAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ... 7

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) ... 6

*May v. Philo, Inc.*,
No. 23-cv-01394-MMC, 2023 WL 4410505 (N.D. Cal. July 7, 2023) ... 4

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) ... 10

*Pharmacychecker.com v. Nat'l Ass'n. of Bds. of Pharm.*,
530 F. Supp. 3d 301 (S.D.N.Y. 2021) ... 10

*Rancourt v. Meredith Corp.*,
No. 22-cv-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024) ... 8

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
487 U.S. 781 (1988) .......... 9

*Salazar v. National Basketball Association*,
118 F.4th 533 (2d Cir. 2024) .......... 1, 4, 5, 6

*Saunders v. Hearst Television*,
711 F. Supp. 3d 24 (D. Mass. 2024) .......... 7, 9

*Sterk v. Redbox Automated Retail*,
770 F.3d 618 (7th Cir. 2014) .......... 8

**Statutes & Other Authorities**

Video Privacy Protection Act, 18 U.S.C. § 2710 .......... *passim*

Fed. R. Civ. P. 12(b)(1) .......... 1

Fed. R. Civ. P. 12(b)(6) .......... 1

This challenge to TED's storage of data with closed-loop software programs in order to operate and moderate its website and mobile applications is the first of its kind, and threatens to significantly expand the reach of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. To avoid dismissal of their First Amended Complaint (ECF No. 50, "FAC"), Plaintiffs' opposition brief (ECF No. 63, "Opp.") asks the Court to ignore fatal defects that persist from their original complaint, and to make inferential leaps that are unsupported and undermined by their allegations. First, Plaintiffs try to generate a factual dispute so that the Court will overlook crucial lapses in two Plaintiffs' statutory and Article III standing and any Plaintiff's standing to bring Count Two. Plaintiffs next urge the Court to expand the Second Circuit's ruling in *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024), to hold that registering for a website account creates a subscribership under the VPPA. Finally, Plaintiffs would have the Court disregard the *Twombly*/*Iqbal* plausibility standard and presume the truth of allegations regarding TED's usage and motives that are purely speculative and contradicted in the FAC. That presumption is essential both for the FAC to withstand the VPPA's "ordinary course of business" exception and for the VPPA's application here to comport with the First Amendment. Each of these "asks" should not be credited, and each provides an independent basis for dismissal.

## I. Plaintiffs Baker and Salman Lack Standing, and Count Two Should Be Dismissed.

### A. No Plaintiff Has Standing to Bring Count Two Concerning TED's Website.

Relying solely on a dynamic analysis of the TED website, Plaintiffs ask the Court to infer that Plaintiff Tyler Baker's data was disclosed to OpenWeb.[1] *See* Opp. at 5-6. Plaintiffs fail to acknowledge, however, that a sworn declaration from TED's Chief Technology Officer states in no uncertain terms that OpenWeb contains no records for Plaintiff Baker—or, for that matter, for any of the Plaintiffs. *See* ECF No. 59, Merryman Decl. ¶¶ 13-15. The declaration also sheds light on why that is the case:

[1] Plaintiff Baker is the only Plaintiff who brings Count Two and alleges use of TED's website and a disclosure to OpenWeb. *See* FAC ¶¶ 125, 155-65.

"[r]ecords concerning a user's activity are stored in OpenWeb only if the user is logged into a TED account at the time of those activities and only if that user engages with the website's 'comments' feature." *Id.* ¶ 6.[2] This aligns with the FAC's acknowledgement that OpenWeb hosts and moderates comments on TED.com. FAC ¶ 118. Plaintiff Baker does not allege he engaged with comments on the TED website. *See id.* ¶ 121 (describing his website activities). And indeed, TED's declaration confirms that, in addition to having no data for Plaintiff Baker in OpenWeb, "TED does not have any records indicating that a TED account associated with Plaintiff Baker's e-mail address has used or interacted with the commenting feature of the TED website." Merryman Decl. ¶ 12.

In further support of the foregoing, TED attaches hereto the Supplemental Declaration of Andrew Merryman, which provides screenshots of TED's searches within OpenWeb for the six email addresses associated with Plaintiffs. Supp. Merryman Decl. ¶¶ 4-7, Figs. 1-6. It also confirms that no data concerning Plaintiffs have been overwritten or otherwise deleted from OpenWeb. *Id.* ¶ 3. As such, none of the Plaintiffs allege that they interacted with TED's website in a manner that would have caused their data to be sent to OpenWeb; none of the Plaintiffs' data was in fact sent to OpenWeb; and Plaintiffs lack standing to bring (and also have not stated a plausible claim under) Count Two.

**B. Plaintiff Salman Does Not Have Standing to Bring Count One.**

As to Plaintiff Zainab Salman, Plaintiffs insist that TED has "ignore[d] factual evidence produced [in early discovery] that undercuts its investigation." Opp. at 3. But the single document concerning her account, *see* ECF No. 66-1, Ex. 1, is not inconsistent with TED's records as set forth in the Merryman Declaration. That Plaintiff Salman reset her password on the day that early discovery

[2] Plaintiffs maintain that their dynamic analysis "shows that Website users' PII and video-viewing information is disclosed to OpenWeb when a user views a video, even when a user does not comment on the video." Opp. at 5. Putting aside that this belies the facts submitted by TED, a careful look at FAC ¶¶ 92-93 shows that Plaintiffs selectively provided cropped images of their dynamic analysis; and those images show only that the website name appears among the data. That does not, however, establish that data is stored in OpenWeb "when a user views a video." Opp. at 5. It is not, *see* Merryman Decl. ¶ 6, which is why no data appears in OpenWeb for Plaintiff Baker, *id.* ¶ 12.

was due does not establish that she had an account prior to that day. In fact, TED now submits physical records confirming that Mixpanel shows a "Created at" date of March 18, 2024 for Plaintiff Salman's account. *See* Supp. Merryman Decl. ¶ 9, Ex. 1. Plaintiffs cast aspersions that TED's investigations were not diligent, *see* Opp. at 3, but it is clear why TED was unable to locate an account for Plaintiff Salman during the first round of briefing: Plaintiff Salman did not have an account at that time.

With respect to Plaintiff Salman's account history, *see* Opp. at 4, the fact that she clicked on several pages containing videos—presumably on March 18, 2024 (the day she created the account and produced these records)—does not change the fact that TED does not have any video viewing records associated with her account or email address in Leanplum or Mixpanel. *See* Merryman Decl. ¶ 10. TED's supplemental declaration now provides a screen capture of its search within Leanplum for data associated with Plaintiff Salman's email address. Supp. Merryman Decl. ¶ 9, Fig. 7. It also attaches a screen capture of the Mixpanel report associated with Plaintiff Salman's email address, showing that she downloaded the TED application on March 18, 2024 and viewed several pages that same day, and deleted the application three days later. *Id.* ¶ 9, Ex. 1. The declaration explains that the report does not reflect any video views by Plaintiff Salman. *Id.* ¶ 9. It also confirms that no data concerning Plaintiffs have been overwritten or otherwise deleted from Leanplum or Mixpanel. *Id.* ¶ 3.

Plaintiffs are right about one thing: the fact that Salman created an account, reset her password, and clicked on multiple pages on March 18, 2024, is not a "mere coincidence" Opp. at 4. All of it occurred in the span of a few hours for one reason: to enable her to produce early discovery that day. Plaintiff Salman should be dismissed for lack of standing, for the equitable reasons set forth on pages 7 and 8 of TED's opening brief, and for failure to state a claim on which relief can be granted.[3]

[3] In light of the standing issues raised in these briefs and the accompanying declarations, the Court also has discretion to convert TED's request to one for summary judgment; or, alternatively, to order the parties to conduct limited discovery concerning standing. TED submits that such discovery could be accomplished expediently, after which time the parties could file supplemental briefs on standing not to exceed five pages exclusive of exhibits. *See May v. Philo, Inc.*, 2023 WL 4410505, at *2 (N.D. Cal. July 7, 2023) (deferring motion to dismiss VPPA claim and ordering limited jurisdictional discovery).

## II. The FAC Does Not Adequately Allege the Elements of a VPPA Claim.

### A. Plaintiffs Fail to Establish "Subscriber"—and by Extension "Consumer"—Status.

Plaintiffs assert that the Court's prior order is "no longer good law" and that, under *Salazar*, merely providing a name and e-mail address to create a website account transforms an individual into a subscriber under the VPPA. Opp. at 1. As TED explained in its opening motion, *see* ECF No. 58 ("Mot.") at 10-12, the Second Circuit expressly disclaimed any such holding. *See Salazar*, 118 F.4th at 550 n.11, 552 n.14 (reserving judgment on a broader interpretation of the term "subscriber" to encompass website video viewers). Indeed, if providing such information was itself sufficient to create a subscribership, the VPPA's larger "consumer" requirement would be rendered nearly obsolete.

The key question resolved by *Salazar* was whether the "goods or services" made available through an alleged subscribership must be audiovisual in nature. *Id.* at 544. The Second Circuit held that they do not: a user can become a qualifying "subscriber" by enrolling to receive non-audiovisual goods or services, such as an email newsletter. *See id.* at 546-50. But that holding is not dispositive here. TED's motion to dismiss sets forth why, in the wake of *Salazar*, the FAC still falls short of pleading facts sufficient to establish "subscriber" status. *See* Mot. at 10-14.

Plaintiffs also assert that *Salazar* renders the six *Ellis* factors irrelevant, but the Second Circuit made no such statement. *See* 118 F.4th at 551-52 (agreeing with *Ellis* that payment is non-dispositive). Although the court did not methodically apply each factor, Salazar's subscription plainly satisfied most of the factors besides payment: registration, delivery, exclusive access, and an ongoing commitment. Recognizing that this argument does not hold water, Plaintiffs argue that each of the six factors weighs in their favor, *see* Opp. 7-11—but the *Ellis* analysis plainly counsels against a subscribership.

First, failing to heed the Court's advice, *see* ECF No. 48 ("MTD Order") at 11-12, Plaintiffs did not supplement their allegations regarding TED account holders' "access to restricted content." *Salazar* does not change the fact that no case has found that account features like those listed in the FAC

constitute "restricted content." Critical in *Salazar* was that the alleged subscribership entailed the ongoing delivery of exclusive content (newsletters)—content only available to registrants—placing *Salazar* in line with all other VPPA cases on that issue. *See* 118 F.4th at 552. Plaintiffs here do not allege that account holders received <u>any</u> exclusive content. To allow a lack of internet service to serve as the requisite "restriction" is nonsensical, *see Ellis v. The Cartoon Network*, 803 F.3d at 1257 (11th Cir. 2015) (app offered "quicker access to the website's content," but not "exclusive or restricted content"); and the other account features are either "social media type benefits," *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) or, in the case of video suggestions, "simply notif[y] readers about [] Website content—content available to anyone." *Edwards v. Learfield Commc'ns*, 2023 WL 8544765, at *6 (N.D. Fla. Oct. 6, 2023).

The rest of Plaintiffs' arguments are easily dispensed. Plaintiffs do not supplement their allegations as to "expressed association," and claim now that "*Salazar* forecloses [the] argument." Opp. at 11. The FAC does not allege any facts to support this factor, which requires some action by the <u>plaintiff</u> beyond those satisfying the separate "registration" factor. *See* Mot. at 13-14. There also is no textual support for Plaintiffs' assertion that under *Salazar* they have pleaded an "ongoing commitment," *id.* at 10, and the block quote on page 9 of the Opposition does not concern that element: it merely describes the information NBA received through Salazar's subscribership. *Salazar* also has no bearing on the "delivery" analysis, which is still unsatisfied. *See id.* at 13; MTD Order at 10.

Finally, TED fully agrees with this Court and with the Second Circuit that the payment factor is not dispositive of the subscriber analysis. *See* MTD Order at 9-10; *Salazar*, 118 F.4th at 551-52. But that does not mean the presence or absence of payment is irrelevant, nor does it mean that the provision of personal information is itself a form of payment. That would mean that a payment is present in all VPPA cases. Instead, it is clear from its YouTube hypothetical that the Second Circuit recognized that payment was <u>not</u> present in *Salazar*, but that the surrounding facts—i.e., the ongoing delivery of

exclusive content in exchange for enrollment—nevertheless supported a subscribership. 118 F.4th at 552. Similar facts are not present here, and the *Ellis* factors counsel against Plaintiffs' subscriber status.

**B. Plaintiffs Fail to Plausibly Allege That the Ordinary Course of Business Exception Does Not Apply.**

Plaintiffs' principal rebuttal on the ordinary course of business ("OCOB") exception is that it "is an affirmative defense that Plaintiffs are not required to plead around." Opp. at 14. Relying on out-of-circuit case law, Plaintiffs ignore that courts in this District have made clear that VPPA plaintiffs must affirmatively plead that the exceptions in § 2710(b)(2) do not apply. *E.g.*, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) ("To state a claim under § 2710(b), a plaintiff must allege that . . . (4) the disclosure was not authorized by another part of the statute."); *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *5 (S.D.N.Y. Sept. 28, 2024) (same); MTD Order at 3 (same). The FAC is replete with source material showing that TED employed Leanplum, Mixpanel, and OpenWeb for purposes that fall squarely within the OCOB exception. *See* Mot. at 16-18 (OpenWeb used solely for commenting functionality; Leanplum and Mixpanel to manage and personalize TED content; monitor user engagement and retention; update and maintain the website; and safeguard user data).

Plaintiffs' allegations that the three software programs provide TED with marketing and advertising services are generalized, speculative, and unsupported. Such naked assertions are not plausibly alleged and are contradicted by all substantive allegations about TED's use of the software. In fact, despite the FAC's extensive references to a TED case study, quotes from TED leadership, and TED policies and FAQs, marketing and advertising are not mentioned <u>once</u>, nor are <u>any</u> financial or economic motivations or outcomes. *Cf. Hernandez v. The Container Store*, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3, 2024) ("Plaintiff's references to Defendant's 'monetizing' the hosted 'video content' do not include allegations that Defendant sells such content or even receives remuneration from TikTok[.]").[4]

[4] That the alleged disclosures are authorized by the OCOB exclusion is even more apparent now that Plaintiffs have amended their complaint. Although TED's first motion to dismiss raised the conclusory

The FAC's sole allegations about the potential marketing or advertising uses of the software describe the software's capabilities in general, and make no reference to uses to which TED employs the software. In addition, Plaintiffs' arbitrary distinction that a vendor "may not become *involved* with analyzing [customer records]," *see* Opp. at 16, also finds no support in the VPPA. *See* S. Rep. No. 100-599 at 13-14 (1988) ("This [OCOB] subsection takes into account that video tape service providers may use third parties in their business operations. . . . [and] allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'").

TED's storage of data using the software at issue is entirely distinguishable from the disclosures made to advertising services in all of the OCOB cases relied on by Plaintiffs. *In re Hulu Privacy Litigation* involved disclosures to Facebook, allowing it "to leverage its platform and gain information about its users." 2014 WL 1724344, at *16 (N.D. Cal. Apr. 28, 2014). Hulu was also using its vendor comScore to send "information (or metrics) about its 'audience size'" to advertisers, who paid Hulu based on the number of ad views. *Id.* at *3. Similarly, both *Saunders v. Hearst Television*, 711 F. Supp. 3d 24, 29 (D. Mass. 2024), and *Louth v. NFL Enterprises*, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022), involved disclosures to Google's DoubleClick and Anvato platforms, respectively, to link users to their Google "advertising ID" and thereby maximize advertising revenue. *Ade v. Viki, Inc.* concerned disclosures to Meta Pixel for the same reason. *See* 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) (disclosures allowed Viki to "better target[ ] their products and services on Facebook to interested consumers" and Meta to build "more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads"). In *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *2 (D.

---

nature of Plaintiffs' allegations concerning TED's use of the software at issue, the FAC did not supplement those allegations. As this Court is aware, the parties exchanged early discovery in March 2024, including the operative contracts between TED and the software programs. *See* ECF No. 27. Plaintiffs' inability to extract any new allegations from those contracts speaks volumes: TED uses the software at issue only to enable and execute on the central aspect of its business.

Mass. Feb. 1, 2024), the disclosures (again including users' "advertising ID") were sent to Twilio, who "act[ed] as a facilitator" by "compil[ing] and transmit[ing] users' personal information to other third parties, like Facebook, Google, and Salesforce" for targeted advertising. And in *Burdette v. FuboTV Inc.*, the disclosures were made directly to "advertising networks and advertisers and other third parties," in order "to deliver relevant advertising." 2024 WL 2831466, at *2, *4 (N.D. Ill. June 4, 2024) (quoting defendant's own annual reports). That these courts found that the plaintiffs had adequately pleaded that the OCOB exception may not apply says nothing about whether that result is appropriate here. Rather, TED's use of the closed-loop software programs here closely aligns with the support functions from *Sterk v. Redbox Automated Retail*, 770 F.3d 618 (7th Cir. 2014), *see* Mot. at 15, and with the "automated distributor[] receiv[ing] customers records" and "passive information storage" services that Plaintiffs acknowledge comport with the OCOB exception. *See* Opp. at 16.

## III. The VPPA's Application Here Violates the First Amendment.

Plaintiffs' First Amendment argument likewise requires blind deference to their unfounded assertions, this time that the alleged disclosures must be "commercial" because they were made solely to "monetize[] [TED's] extensive free video viewership, in part, with revenue from advertisements[.]" Opp. at 20. Plaintiffs also ignore that TED mounts an as-applied—not a facial—challenge. But there is no avoiding that the vendors, usage, and even the defendant here are distinct from those in other VPPA cases, almost all of which involve disclosures directly to advertising platforms for the express purpose of data monetization. The VPPA's application here would be the furthest extension of the statute by any court, and would both restrict and have a profound chilling effect on non-commercial speech.

Every case to address the issue has found that the VPPA targets only commercial speech. *See* Mot. at 20. As will be set forth in more detail in TED's forthcoming response to the United States's amicus brief, that TED's alleged "disclosures" took place in connection with a business relationship, or that they could or even if they were intended to result in some financial benefit due to increased

viewership, does not render them commercial. Instead, speech is commercial—and restrictions thereon are subject to reduced scrutiny—only if it "does no more than propose a commercial transaction" or "relate[s] solely to the economic interests of the speaker and its audience." *See* Mot. at 19-20. The FAC does not plausibly allege that TED's data storage practices fit either definition.

Cognizant of these tests for commercial speech, Plaintiffs ask the Court to focus only on their allegations concerning advertising, and disregard that the FAC lists over a dozen other uses to which TED employs Leanplum, Mixpanel, and OpenWeb software. *See* FAC ¶¶ 99, 100-03, 115-18. Even if credited, Plaintiffs' allegations concerning TED's motivations at a minimum render the commercial and non-commercial elements of its speech "inextricably intertwine[d]," which would still result in the application of strict scrutiny. *See Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796 (1988). *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) does not impact this analysis. There the finding of commercial speech was supported by allegations that the defendant was "*selling* demographic information about its consumers to 'data miners and other third parties,' which allows for targeted marketing, advocacy, and solicitations[.]" *Id.* at 435 (emphasis added). Its speech—data showing "individuals who purchase[] products"—was deemed commercial and constitutional as applied to "sellers" of such data. *Id.* at 445-54; *see also Saunders*, *supra* p.7. There is no allegation here that TED is selling data to its software providers or that the data at issue concerns purchasers.

Plaintiffs also misunderstand TED's point regarding its non-profit status: TED does not argue that the VPPA is *per se* unconstitutional as applied to non-profits, but rather that TED's undisputed status as a non-profit with an educational mission undermines the plausibility of allegations that its speech here related solely to its financial interests. Courts regularly accord heightened protection to otherwise commercial speech by non-profit groups. *E.g.*, *Pharmacychecker.com v. Nat'l Ass'n. of Bds. of Pharm.*, 530 F. Supp. 3d 301, 355 (S.D.N.Y. 2021); *Gordon & Breach Sci. Pubs. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (collecting Supreme Court cases); *see also Ostergren*

*v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010) (distinguishing non-profits' act of posting land reports as non-commercial speech from false statements in credit reports, which was deemed commercial speech in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763 (1985) (finding that speech at issue was "solely motivated by the desire for profit which . . . is a force less likely to be deterred than others")). At the very least, Plaintiffs must come forward with more to establish the plausibility of TED's allegedly purely commercial motive—which they have not done.

The VPPA's overbreadth, vagueness, and unconstitutionality as applied here would have a significant ripple effect on other entities' constitutionally protected speech. *See* Mot. at 22-25. To rebut TED's arguments on the chilling effects of extending the VPPA and show that the VPPA is narrowly tailored, Plaintiffs assert that the solution is user consent, which they argue "is not hard to accomplish." Opp. at 23 (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016)). But VPPA consent is neither easy nor typical: the VPPA outlines a detailed procedure to obtain consent, imposing a higher burden than most privacy laws, by regulating the regularity with which consent must be given and requiring that the affirmative consent be obtained separately from any other privacy notice. *See Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (premature to rule on consent given complex statutory language where "the VPPA imposes more stringent requirements for a finding of informed consent" and imposes a "separate and distinct" consent requirement).

Although a party could perhaps mount a viable constitutional challenge under lesser facts, the "trifecta" here—(1) a non-profit (2) storing data in closed-loop software programs, (3) for the purpose of IT support untethered from advertising—leaves no doubt that the VPPA should not apply. Further, the Court should avoid this question entirely by construing "subscriber" or the OCOB exception to bar Plaintiffs' claims, under the doctrine of constitutional avoidance. *See* Mot. at 25; ECF No. 69 at 9-11.

For these reasons and those set forth in its opening brief, TED respectfully requests that the First Amended Complaint (ECF No. 50) be dismissed with prejudice.

Dated: December 18, 2024

Respectfully submitted,

By: *\/s/ Carter C. Simpson*
Carter C. Simpson (*pro hac vice*)
Ryan P. Phair (*pro hac vice*)
Emma J. Hutchison (*pro hac vice*)
**PAUL HASTINGS LLP**
2050 M Street, N.W.
Washington, DC 20036
cartersimpson@paulhastings.com
ryanphair@paulhastings.com
emmahutchison@paulhastings.com
Telephone: 1(202) 551-1753
Facsimile: 1(202) 551-0253

*Attorneys for Defendant TED Foundation Inc.*

**CERTIFICATE OF SERVICE**

I, Emma J. Hutchison, hereby certify under penalty of law that on December 18, 2024, I caused a copy of the foregoing to be served electronically on all counsel of record via ECF.

*/s/ Emma J. Hutchison*
Emma J. Hutchison