**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIMBERLY SUTTON, DAVID RAMIREZ, and TYLER BAKER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TED FOUNDATION, INC.,

Defendant.

Case No. 1:23-cv-09219-DEH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Hon. Dale E. Ho

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. SUMMARY OF ALLEGATIONS ..... 2

II. PROCEDURAL HISTORY ..... 3

III. KEY TERMS OF THE PROPOSED SETTLEMENT ..... 4

A. The Proposed Class ..... 4

B. Monetary Compensation ..... 4

C. Prospective Relief ..... 5

D. Release ..... 5

E. Notice And Administrative Expenses, And Attorneys' Fees, Costs, And Expenses ..... 6

F. Service Awards ..... 6

ARGUMENT ..... 6

I. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..... 6

A. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ..... 8

B. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) ..... 10

C. The Reaction Of The Class (*Grinnell* Factor 2) ..... 11

D. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ..... 11

E. Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5) ..... 12

F. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ..... 13

G. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9) ... 13

II. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ... 15

A. The Settlement Class Meets The Requirements Of Rule 23(a) ... 16

B. Predominance And Superiority Are Satisfied ... 19

III. THE COURT SHOULD APPROVE THE FORM AND CONTENT OF THE PROPOSED NOTICE ... 20

CONCLUSION ... 21

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Alcantara v. CNA Mgmt., Inc.*,
264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .......... 16

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 15, 16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......... 7, 8, 14

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 158 (E.D.N.Y. 2009) .......... 16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .......... 16

*Cruz Guerrero v. Montefiore Health Sys. Inc.*,
2025 WL 100889 (S.D.N.Y. Jan. 15, 2025) .......... 20

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 15

*Esposito v. Nations Recovery Center, Inc.*,
2021 WL 2109077 (D. Conn. May 25, 2021) .......... 14

*Fox v. Cheminova*,
213 F.R.D. 113 (E.D.N.Y. Feb., 28, 2003) .......... 19

*Freeland v. AT & T Corp.*,
238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) .......... 17

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
925 F.3d 63 (2d Cir. 2019) .......... 7

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007) .......... 16

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) .......... 10, 12, 13

*In re Google LLC Street View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .......... 14

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........ 8

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir. 1980) ........ 7

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ........ 20

*In re Vizio, Inc., Consumer Priv. Litig.*,
2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ........ 16, 17

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........ 11

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir. 1987) ........ 19

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152, (S.D.N.Y. Mar. 19, 2014) ........ 17

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
333 F.R.D. 314 (S.D.N.Y. 2019) ........ 8

*Lane v. Facebook, Inc.*,
2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) ........ 14

*Lizondro-Garcia v. Kefi LLC*,
300 F.R.D. 169 (S.D.N.Y. May 29, 2014) ........ 15, 17

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir.1997) ........ 16, 17, 18, 19

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995) ........ 6

*Moses v. The New York Times Co.*,
79 F.4th 235 (2d Cir. 2023) ........ 7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........ 21

*Robinson v. New York City Transit Auth.*,
2020 WL 5884055 (S.D.N.Y. Aug. 31, 2020) ........ 18

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. Sept. 4, 2004) ..................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
517 F. Supp. 380 (S.D.N.Y. 1981) ..................... 10

*Torres v. Gristede's Oper. Corp.*,
2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................... 6

**STATUTES**

18 U.S.C. § 2710 ..................... 1

**RULES**

Fed. R. Civ. P. 23 ..................... 16

Fed. R. Civ. P. 23(a) ..................... 15, 16

Fed. R. Civ. P. 23(a)(1) ..................... 16

Fed. R. Civ. P. 23(a)(2) ..................... 16, 17

Fed. R. Civ. P. 23(a)(3) ..................... 18

Fed. R. Civ. P. 23(a)(4) ..................... 18

Fed. R. Civ. P. 23(b) ..................... 20

Fed. R. Civ. P. 23(b)(3) ..................... 15, 16, 19

Fed. R. Civ. P. 23(e) ..................... 8

Fed. R. Civ. P. 23(e)(1) ..................... 20

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..................... 7

Fed. R. Civ. P. 23(e)(2)(C-D) ..................... 8, 20

Fed. R. Civ. P. 23(e)(3) ..................... 8

Fed. R. Civ. P. 23(D) ........................................................................................................ 8

**OTHER AUTHORITIES**

Newberg on Class Actions § 11.25 (4th ed. 2002) ........................................................... 6

Newberg on Class Actions § 11.41 (4th ed. 2002) ........................................................... 7

**INTRODUCTION**

Under Rule 23(e), Plaintiffs Kimberly Sutton, David Ramirez, and Tyler Baker (collectively, "Plaintiffs") respectfully move the Court to enter an order certifying the settlement class as described herein (the "Settlement Class" or "Class") for settlement purposes only and granting preliminary approval of the class action settlement (the "Settlement" or "Settlement Agreement").

The Settlement resolves Plaintiffs' claims under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*, against TED Foundation, Inc. ("Defendant" or "TED"; collectively with Plaintiffs, the "Parties") that are the subject of the above-captioned matter (the "Litigation").

In the Litigation, Plaintiffs allege that Defendant disclosed certain of its users' personally identifiable information ("PII")—names, email addresses, videos viewed, and user IDs—to third-party service providers Leanplum, Mixpanel, and OpenWeb (collectively, the "Third Parties"), without users' informed, written consent when users watched a video on the website TED.com or Defendant's iOS and Android mobile applications ("the "TED Service"). Plaintiffs alleged this conduct violated the VPPA. Defendant disputes Plaintiffs' allegations and denies that it acted wrongfully in any manner or that it has any liability for a violation of the VPPA or any other law. Defendant alleges, among other defenses, that it does not transfer users' names or email addresses together with video views to any of the Third Parties, nor does it transfer any user data in a legible (non-encrypted, non-encoded) format. The Parties recognize the expense and risk associated with continuing the Litigation and therefore have reached an arm's-length settlement of the issues and claims, which they now present to the Court for preliminary approval.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate,

particularly when considering Defendant's very limited ability to fund a settlement. At Defendant's expense, all Settlement Class Members shall automatically receive two free months of TED Membership (the "TED Membership Benefit"), subject to their agreement to activate the TED Membership Benefit. Alternatively, in lieu of the TED Membership Benefit, Settlement Class Members may submit claims through a simple claims process to elect to receive a cash payment or remit their cash payment in the form of a donation made on their behalf to TED Foundation, Inc. This structure provides meaningful relief to class members despite Defendant's limited ability to fund a larger settlement and limited insurance coverage.

Plaintiffs and their counsel have vigorously represented the interests of the Settlement Class and, through extensive arm's length negotiations overseen by an experienced mediator, Marc E. Isserles, Esq., have developed an understanding of the strengths and weaknesses of this action.

For the reasons set forth herein, Plaintiffs respectfully request the Court enter an order: (1) preliminarily approving the Settlement and certifying the Settlement Class identified in the Proposed Settlement Agreement, attached to the Kopel Decl. as **Exhibit A**; (2) appointing Plaintiffs as Class Representatives for the Settlement Class; (3) appointing Bursor & Fisher, P.A. as Class Counsel; (4) directing notice to the Settlement Class and approving the form and manner thereof; and (5) authorizing the retention of Fidexis, LLC as Settlement Administrator.

## BACKGROUND

### I. SUMMARY OF ALLEGATIONS

Defendant operates a video service that provides users with pre-recorded videos, accessible through the TED Service, through which users may view thousands of pre-recorded videos. In this Litigation, Plaintiffs allege that Defendant intentionally disclosed U.S. account holders' PII to Third Parties through software installed on the TED Service in violation of the VPPA.

Defendant disputes Plaintiffs' allegations and denies that it acted wrongfully in any

manner. Defendant alleges that it never discloses account holders' names or email addresses together with their video views, and that all data stored with the Third Parties is encrypted and encoded prior to transmission, thus preventing it from being legible to the ordinary person as required under the VPPA. Defendant also argues that it employs the third-party software only for internal use and to operate the TED Service, and that such usage is permitted under the VPPA's exception for transmissions that occur in the ordinary course of business.

## II. PROCEDURAL HISTORY

On October 19, 2023, Plaintiffs filed this putative class action against Defendant in the United States District Court for the Southern District of New York (ECF No. 1).

On September 12, 2024, the Court dismissed the original complaint for failure to state a claim, but granted Plaintiffs leave to amend (ECF No. 48). On October 14, 2024, Plaintiffs filed their First Amended Complaint (ECF No. 51).

On January 27, 2026, the Court denied Defendant's motion to dismiss the First Amended Complaint (ECF No. 91). On February 20, 2026, the Court denied Defendant's motion to stay the action pending the Supreme Court's decision in *Salazar v. Paramount Global*, No. 25-459 (ECF No. 98). In the same Order, the Court also denied Defendant's motion for partial reconsideration (ECF No. 98).

Thereafter, the Parties agreed to engage in settlement discussions and to proceed with a mediation with Marc E. Isserles Esq. of JAMS. On April 21, 2026, the Parties filed a joint letter motion to stay the action pending their May 29, 2026 mediation (ECF No. 99), which the Court granted (ECF No. 100). The Parties participated in an all-day in-person mediation session with Marc E. Isserles Esq. on May 29, 2026. During the mediation session and with Marc E. Isserles Esq.'s continued assistance, the parties reached a settlement, which is memorialized in the Proposed Settlement Agreement attached to the Declaration of Yitzchak Kopel as **Exhibit A**.

## III. KEY TERMS OF THE PROPOSED SETTLEMENT

### A. The Proposed Class

The Settlement Class is comprised of, at least, tens of thousands of TED account holders. Specifically, the Settlement Class consists of all persons in the United States who, during the Class Period, were TED account holders and watched a pre-recorded video on the website TED.com or on TED's iOS or Android mobile applications. The "Class Period" is the period from October 19, 2021, to and including the date of preliminary approval. Excluded from the Class are: (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; and (3) the legal representatives, successors, or assigns of any such excluded persons. *See* Kopel Decl. Ex. A § 1 (Definitions: "Class Period," "Settlement Class").

### B. Monetary Compensation

TED shall (1) within sixty (60) days of the Effective Date, send Settlement Class Members who did not submit a Claim Form or request exclusion an email containing a clickable link allowing them to activate two free months of the TED Membership Benefit; (2) within thirty (30) days of the Effective Date, deposit the sum of no more than $350,000.00 USD into the Qualified Settlement Fund established and administered by the Settlement Administrator, for those Settlement Class Members who elect to receive a cash payment in lieu of the TED Membership Benefit; and (3) provide a donation option, whereby a Settlement Class Member agrees to forgo receipt of any monetary relief from the Settlement in favor of remitting such cash payment to TED. *Id*. § 2; *see also id*. § 1 (Definitions: "Settlement Fund," "Qualified Settlement Fund"). The TED Membership Benefit carries an in-kind value of at least $10.00 USD and provides recipients with exclusive access to live and live-streamed talks, interviews, and other TED programming, and to

networking opportunities with local and global changemakers and thought leaders.

The donation option is distinct from opting out, in that any Settlement Class Member who selects this option shall still be bound by the terms of the Settlement, including the release of the Released Claims. *Id.* §§ 2.1(b), 2.2, 2.3. Settlement Class Members who select the cash payment option may receive a maximum of $5.00 USD and in no event shall Defendant's cash payment to Settlement Class Members selecting the cash payment option exceed $350,000.00 USD. *Id.* If Settlement Class Members select either the cash or donation option, they shall not receive the TED Membership Benefit. Cash payments may be made by check, Venmo, or PayPal and will be paid within sixty (60) days after the Effective Date. *Id.* §§ 2.5, 2.9, 2.10.

### C. Prospective Relief

Under the Settlement, Defendant has agreed to injunctive relief consisting of: (1) presenting U.S. account holders whose event data will be transmitted to OpenWeb with an affirmative, VPPA-compliant consent option; and (2) ceasing the transmission of U.S. account holders' first and last names or email addresses to Mixpanel, and using reasonable efforts to discontinue the storage of existing such data within Mixpanel. *Id.* § 2.4.[1]

### D. Release

In consideration of the Settlement benefits, the Released Parties will receive a full release of all Released Claims arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions, or failures to act regarding the alleged disclosure, use, interception, or transfer of information of or related to the Settlement Class Members stemming from the use of the TED Service. Kopel Decl. Ex. A § 1 (Definitions: "Released Parties," "Released Claims"); *id.* § 3.

---

[1] Defendant has confirmed that it no longer employs the services of third-party Leanplum.

### E. Notice And Administrative Expenses, And Attorneys' Fees, Costs, And Expenses

Class Counsel shall petition the Court to approve an amount no more than $700,000.00 USD for settlement administration costs and expenses (such as the expenses incurred by the Settlement Administrator in providing Notice, processing claims, responding to inquiries from members of the Settlement Class, mailing checks for Approved Claims, and related services), as well as Class Counsel's attorneys' fees, as determined by the Court upon final approval of the settlement. Kopel Decl. Ex. A § 8.1. Class Counsel has agreed to accept a lesser amount if so ordered by the Court. *Id.* The Court's determination on any application for attorneys' fees, costs, or Service Awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement and will not affect the effectiveness of the Settlement. *Id.* § 6.2.

### F. Service Awards

In recognition of their efforts on behalf of the Settlement Class, the Parties have agreed that the Class Representatives may petition the Court for Service Awards of $2,500.00 USD each, separate from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and Parties to this action. *Id.* § 1 ("Service Award"); *id.* § 8.3.

## ARGUMENT

## I. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is left to the discretion of the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

When considering the fairness of a proposed settlement, courts must "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. The New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2)(C)-(D)). When evaluating the relief provided, "courts must 'tak[e] into account,' among other considerations, 'the terms of any proposed award of attorney's fees,'" such that "'both the terms of the settlement and any fee award encompassed in a settlement agreement [is reviewed]' in tandem." *Id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)); *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 72 (2d Cir. 2019)).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). Although the Court's present task is to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4)

the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).

### A. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Defendant's financial outlook played a critical role in settlement negotiations. As the Court is aware, Defendant is a nonprofit organization with a mission statement of providing free public education. Although Defendant had an applicable insurance policy, the coverage limits amount to less than $1.00 USD per putative class member. Prior to mediation, Defendant provided financial

data to Plaintiffs reflecting that it had run at a revenue deficit for several years. Defendant also disclosed that its attorneys were representing it on a *pro bono* basis in this action.

In negotiating this settlement, Plaintiffs attempted to find a balance between achieving relief for class members in what they allege was a legitimate privacy violation, while also being mindful that class members are likely to be supporters of Defendant's mission and programming. Given this unique scenario, Plaintiffs assessed that the interests of class members will be best served by achieving a resolution that does not undermine Defendant's ability to continue providing its programming and other benefits to class members going forward.

Chief among Plaintiffs' concerns was to ensure that Defendant's alleged VPPA violations ended and that best efforts be made to remedy past alleged violations, although Plaintiffs acknowledge that Defendants deny that any such violations have occurred. That was accomplished through injunctive relief that comes at a considerable expense to Defendant but ensures that no violations occur in the future and that third parties' access to user information be severed to the greatest extent possible. Given that class members are likely to continue using Defendant's services in the future, this injunctive relief provides prompt and meaningful belief to class members.

Given the large number of class members, it was difficult to structure a deal that would provide affirmative relief to class members without financially harming Defendant. But the Parties nonetheless negotiated a deal in which class members will be able to submit claims for cash (or alternatively activate the two-month Ted Membership Benefit); the costs of claims administration will be paid; and Plaintiffs and their counsel can seek awards, in amounts all likely to fall within the coverage limits of Defendant's modest insurance policy.

This is the best possible outcome for Plaintiffs and class members.

### B. Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to class certification, summary judgment, or trial, Plaintiffs seek to avoid significant expense and delay and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts consistently have held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

Here, the Parties engaged in early discovery prior to reaching the Settlement, including on issues such as Defendant's agreements with the Third Parties. Had no settlement been reached, the next steps in the litigation would have been full-fledged fact and expert discovery and contested motions for summary judgment and class certification, which would be at minimum costly and time-consuming for the Parties and the Court and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. If Plaintiffs prevailed through all of that, the Parties would still have to litigate the case at trial and possible appeals.

Although Plaintiffs are confident in the strength of their claims, they nevertheless recognize that this litigation is inherently risky. Defendant made colorable arguments regarding the constitutionality of Plaintiffs' claims, and the potential application of the VPPA's "ordinary course of business" exception. Defendant also provided support for its allegations that the data it stored with the Third Parties were encrypted and encoded during transmission, and did not include users' names or email addresses together with their video views. In addition, claims applying the VPPA

to modern web and mobile tracking technologies remain relatively untested and the law is in relative flux as circuit courts and even the Supreme Court weigh in on the statute's application to these technologies. Absent the instant Settlement, Plaintiffs would have to conduct additional formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and pursuing third-party discovery from entities such as Leanplum, Mixpanel, and OpenWeb. Assuming Plaintiffs survived summary judgment, they would need to certify and maintain a class over Defendant's opposition, prevail at trial, and secure an affirmance on appeal before recovering damages. To the best of Class Counsel's knowledge, no VPPA case has gone to trial, underscoring the inherent risk of proceeding. Ultimately, continued litigation could add several more years before there is a resolution. Such risks support approval of this Settlement, which permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the Settlement.

### C. The Reaction Of The Class (*Grinnell* Factor 2)

Because Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature."). Plaintiffs are unaware of any opposition to the present Settlement Agreement.

### D. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that

they are not designed to justify a settlement … but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176. Here, the Parties litigated this case adversarially through the pleading stage, including two rounds of motion-to-dismiss briefing—after which the Court sustained Plaintiffs' First Amended Complaint—and contested motion practice concerning a stay and reconsideration. Prior to reaching the Settlement, the Parties exchanged information sufficient to assess the strengths and weaknesses of the claims and defenses and their relative negotiating positions. Kopel Decl. ¶¶ 8-9.

The Parties conducted limited discovery including Defendant's agreements with the Third Parties. Kopel Decl. ¶ 8. The Parties also discussed and debated the key facts, legal issues, litigation risks, and potential settlement structures. *See id.* ¶ 9. This information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions. *Id.* ¶¶ 8-9.

Further, Class Counsel's experience in class action matters, as well as the other efforts made by counsel on both sides, confirms that the Parties are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed settlement. This *Grinnell* factor thus also weighs in favor of preliminary approval.

### E. Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)

Although Plaintiffs believe their case is strong, it is not without risk. Defendant continues to deny any wrongdoing, and has made it clear that, if the litigation continues, it will move for summary judgment on various issues and vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must

only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177. In the context of this litigation, not only would Plaintiffs and the Class face risks in overcoming Defendant's motion practice, as well as certifying a class, but also further litigation will only delay relief to the Settlement Class Members. The Settlement alleviates these risks and provides a substantial benefit to the Settlement Class in a timely fashion. These *Grinnell* factors thus favor preliminary approval.

### F. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining class status through trial is also present. To Plaintiffs' knowledge, only one class has ever been certified in a VPPA case before in the entire history of the Act. The Court has not yet certified the proposed Settlement Class and the Parties anticipate that such a determination would be reached only after discovery is completed, and exhaustive class certification briefing is filed. Defendant would argue that individual questions preclude class certification, that a class action is not a superior method to resolve Plaintiffs' claims, and that Plaintiffs are not adequate class representatives nor are their claims typical of those of absent class members. Should the Court certify the class, Defendant would also likely challenge certification through a Rule 23(f) petition, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. This factor weighs in favor of preliminary approval.

### G. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

"The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum … Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion." *Esposito v. Nations Recovery Center, Inc.*, 2021 WL 2109077 (D. Conn. May 25, 2021). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Per the Second Circuit in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Applying these standards here, there is no question that this factor supports approval of the Settlement. The settlement relief provides for Settlement Class Members to automatically receive two free months of the TED Membership Benefit. TED Membership is typically only available to individuals who donate a minimum of $5.00 USD per month to TED Foundation, Inc., thus giving the two-month TED Membership Benefit an in-kind value of at least $10.00 USD. Alternatively, every Settlement Class Member shall have the option, in lieu of the TED Membership Benefit, to submit a Claim Form for either: (i) a cash payment of up to $5.00 USD, subject to a pro rata reduction; or (ii) a "donation" option, whereby a Settlement Class Member agrees to forgo receipt of any relief from the Settlement in favor of remitting their cash entitlement hereunder to TED Foundation, Inc. This relief will yield a significant benefit to each of the participating Class Members. The Settlement also requires business practice revisions that provide significant benefits to all Class Members.

Further, this Settlement compares favorably with VPPA and other privacy settlements that came before it. *See, e.g.*, *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re Google LLC Street View Elec. Commc'ns Litig.,* 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over

objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.,* No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) (dkts. 350, 369) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach); *Waller et al v. Times Publishing Co.,* No. 2023-027889-CA-01 (Fla. 17th Cir. Ct.) (approving settlement in VPPA case that provided for $950,000 common fund).

## II. THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Court should certify the proposed Class for purposes of settlement under Rules 23(a) and (b)(3). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. at 158 (quoting *Steinberg v. Nationwide Mut. Ins*. Co., 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Here, the proposed settlement class easily meets the requirements of Rules 23(a) and (b)(3), especially when considering the lower bar for certifying a settlement class.

**A. The Settlement Class Meets The Requirements Of Rule 23(a)**

Rule 23(a) contains four prerequisites to class certification, each of which is satisfied here.

**Numerosity**: Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *4 (C.D. Cal. Jan. 4, 2019) (VPPA case finding Rule 23(a)(1) is met); *see also Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the number of Class Members is, at least, in the tens of thousands and easily satisfies the numerosity requirement.

**Commonality:** Next, Rule 23(a)(2) provides for class certification only if "there are questions of law or fact common to the class." The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but

rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *In re Vizio, Inc., Consumer Priv. Litig.*, No. 2019 WL 12966639, at *4 (C.D. Cal. Jan. 4, 2019) (VPPA case finding Rule 23(a)(2) is met); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp*., 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, Plaintiffs readily meet this standard, as many common questions of law and fact exist, including: (1) whether Defendant is a video tape service provider within the meaning of the VPPA; (2) whether the information Defendant allegedly disclosed to Third Parties constitutes PII under the VPPA; (3) whether Defendant knowingly disclosed Class Members' PII to those Third Parties; (4) whether Defendant gave notice to Class Members regarding the disclosure of such information; (5) whether Defendant obtained separate and district, informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing their information to those Third Parties; (6) whether Defendant's conduct violates the VPPA; and (7) whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

Plaintiffs believe that all Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is Defendant's alleged common course of conduct, *i.e.*, Defendant's alleged knowing disclosure of Class

Members' PII through technology incorporated into the TED Service. Thus, commonality is satisfied.

**Typicality:** Rule 23(a)(3) requires "the claims or defenses of the representative parties" to be "typical of the claims or defenses of the class." The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A*., 126 F.3d at 376.

Here, Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of the Settlement Class Members. When a Class Member viewed video content on the TED Service, Defendant allegedly caused the Class Member's video-viewing information and PII to be transmitted to Third Parties. Accordingly, Plaintiffs' claims are typical of the Class because they were subject to the same conduct as the other Class Members, and they are alleged to have suffered the same injury as a result.

**Adequacy:** Finally, Rule 23(a)(4)'s adequacy requirement is also met. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." In assessing the adequacy requirement, courts evaluate whether: (1) the class representatives have common interests (i.e. there is no conflict) with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Marisol A.*, 126 F.3d at 378. "[T]he requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Robinson v. New York City Transit Auth.,* 2020 WL 5884055, at *13 (S.D.N.Y. Aug. 31, 2020), *report and*

*recommendation adopted,* 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020) *quoting Marisol A.*, 126 F.3d at 378.

Here, the named Plaintiffs have common interests with the members of the Class in seeking fair, reasonable, and adequate compensation for Defendant's alleged violation of the VPPA. Indeed, the named Plaintiffs' settlement relief benefits will be calculated using the same methodology as the distributions to every other participating class member. Further, the named Plaintiffs have vigorously pursued and protected the interests of the Class in this case by, among other examples, maintaining, reviewing, and explaining relevant records probative of the Class claims, including records regarding their account with the TED Service, seeking out and engaging highly qualified counsel, and negotiating a settlement that confers significant benefits to the Class. Additionally, neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the Class.

Further, numerous other courts in this District have previously found that proposed Class Counsel adequately meet the obligations and responsibilities of class counsel. *See* Kopel Decl. Ex. B, Firm Resume of Bursor & Fisher, P.A. This factor thus favors preliminary approval.

**B. Predominance And Superiority Are Satisfied**

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry requires an analysis of whether there was a "unitary course of conduct," *Marisol A.,* 126 F.3d at 377. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb., 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)).

Here, Plaintiffs believe that common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Defendant's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiffs allege that Defendant disclosed Class Members' PII to Third Parties, and that this conduct uniformly injured Plaintiffs' and the other Class Members' legally protected interests under the VPPA.

The superiority element of 23(b)(3) is also met here. A class action is the most efficient judicial avenue where, as here, Defendant's conduct is alleged to have affected, at least, tens of thousands of individuals in a uniform way. Other available methods, such as individual lawsuits or arbitrations, would be highly inefficient. The parties and judicial system would need to duplicate efforts in such individual proceedings, some of which might be brought in separate venues at different times. "To satisfy the superiority requirement, the moving party must show that the class action presents 'economies of 'time, effort and expense, and promote[s] uniformity of decision.'" *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *5 (S.D.N.Y. Jan. 15, 2025) *quoting In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). "The superiority requirement is designed to avoid 'repetitious litigation and possibility of inconsistent adjudications." *Id.* (collecting cases).

As the requirements of Rule 23(a) and (b) are satisfied, Plaintiffs ask that the Court (1) certify the Class for settlement purposes, (2) appoint the named Plaintiffs as class representatives, and (3) appoint Bursor & Fisher, P.A. as Class Counsel.

## III. THE COURT SHOULD APPROVE THE FORM AND CONTENT OF THE PROPOSED NOTICE

If a settlement class is certified, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Moreover, Rule

23(e)(2) requires the Court to "direct to class member the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed notice will primarily be accomplished by email to Settlement Class Members for whom a valid email address is available, followed by a reminder email seven days before the Claims Deadline. *See* Kopel Decl. Ex. A § 4.1. Notice will also be made available through a Settlement Website maintained by the Settlement Administrator. The proposed notice will include, in plain language, an explanation of the procedure to opt out of the Settlement or to object to the Settlement. These documents are attached as Exhibits B and C of the Settlement Agreement.

As such, the proposed notice before this Court fulfills each of these requirements.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed Settlement, (2) preliminarily certify the Settlement Class for settlement purposes only, (3) approve and authorize the distribution of the proposed notice to class members, (4) name Fidexis, LLC as the Settlement Administrator, and (5) schedule a date and time for the Final Approval Hearing to consider approval of the Settlement and request for specific class Service Awards and motion for approval of Plaintiffs' counsel's attorneys' fees and costs.

Dated: July 13, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

Yitzchak Kopel
Max S. Roberts
Victoria X. Zhou
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
mroberts@bursor.com
vzhou@bursor.com

*Proposed Class Counsel*

**WORD COUNT CERTIFICATION**

I hereby certify that the foregoing Memorandum of Law contains 6,584 words, which meets the word-count limits of L.R. 7.1(c).

Dated: July 13, 2026

By: */s/ Yitzchak Kopel*
Yitzchak Kopel